Town of BARNET *v.* PASSUMPSIC TURNPIKE COMPANY.

*( In Chancery. )*

When a town has expended money in making a public road, and a turnpike is laid on the same road, the town have no claim against the turnpike company for compensation for making the road, which can be enforced at law, or in equity.

A court of equity will not relieve a party from the consequence of not complying with a condition precedent, when the non compliance arose from inattention or negligence.

THIS was an appeal from a decree of the court of chancery, ordering the defendants to pay the orators a certain sum expended by them in making a road, upon which the defendants afterwards laid their turnpike. The bill was answered, the answer traversed, and testimony taken. The substance of the bill, answer and evidence, sufficiently appears in the opinion of the court.

*W. Upham,* for defendant.

1. The complainants are not entitled to the relief sought, because the defendants had a legal right to lay their road on the public highway in question. *Searsburgh T. Co.* v. *Cutler,* 6 Vt. R. 315, 324; act of 1822.

2. There is no equity in the claim set up in the bill, because the taking of the town road saved the inhabitants the expense of repairs, and exonerated them from all liability for " special damages " which might have happened upon it.

3. Up to the time of filing the bond by the order of court, the orators had no claim against the defendants, for the road in question, which could have been enforced. The order of court directing the bond, created no debt against the corporation. If no bond had been filed, no indebtedness would have existed. If the bond had been accepted by a vote of the town within the time limited in its condition, it would have created an indebtedness ; but the failure of the town to vote an acceptance, has rendered it inoperative and void. Newland on Cont. 243, 244. The orators have no legal or equitable claim under the bond, for they neglected to perform the *condition precedent* upon which it' was to become obligatory. *Wells* v. *Smith,* 2 Edward's Ch. R. 78 ; *Hud-*

CALEDONIA, *son* v. *Bartron,* 3 Madd. R. 440 ; *Levy* v. *Lindon,* 3 Mein.
March, 84 ; *Bochno* v. *Wood,* 1 Jac. & Walker 419 ; *Williams* v.
1843. *Edwards,* 2 Sim. R. 78 ; Co. Litt. 206, a ; *Harvy* v. *As-*
Barnet *ton,* 1 Atk. R. 360, West's R. 350 ; *Reymirh* v. *Martin,*
*v.* 3 Atk. 330 ; *Scott* v. *Tyler,* 2 Bro. Ch. R. 431 ; *Powell* v.
Passumpsic *Pollett,* 2 Eg. Ab. 209, pl. 3 ; *Sweet* v. *Anderson,* 2 Bro.
Turn. Co. Ch. R. 256 ; *Duffield* v. *Elens,* 1 S. & S. 229 ; *Long* v.
*Rickett,* S.& S. 179 ; *Clifford* v. *Bearmont,* 4 Mass. R. 425 ;
1 Sugden's Law of Vendors, 516, 517 ; *Bendict* v. *Lynch,*
1 Johns. Ch. R. 634, 6 Cowen, 624. There is a difference
between conditions precedent and conditions subsequent.
In *Popham* v. *Banfield,* 1 Vern. 83, it was said that pre-
cedent conditions must be literally performed, and that a court
of equity will never vest an estate, where, by reason of a
condition precedent, it will not vest at law. But of condi-
tions subsequent, which are to divest an estate, it is other-
wise. A court of equity may relieve to prevent the divest-
ing of an estate, but cannot relieve to give an estate that
never vested. *Cury* v. *Bertie,* 2 Vern. 339.

4. The evidence in the case shows that the complainants
were in court, by their counsel, when the bond was filed,
and they must be presumed, therefore, to have understood
upon what condition it was to become obligatory.

*C. Davis,* for orators, contended that the failure to vote
an acceptance of the bond was the result of accident, from
which no injury resulted to the opposite party, and it was
familiar law that equity will relieve, where, through mistake
or accident, a party fails to reap a just advantage from a
deed or instrument, particularly where a compensation can be
made in money, and cited 5 Ves. 238 ; 3 Atk. 93 ; 2 Vern.
594 ; 1 Bro. C. C. 418 ; cases cited in Madd. Ch. ch. 2 ; 1 Har.
Ch. 27 ; Fonbl. Eq. Book 1, ch. 4, §4, §1. n. c. ch. 6, §4.

He maintained that the court had power to prescribe
such conditions, by consent rule, as they deemed necessary
to indemnify the orators,—such power being constantly exer-
cised in the ordinary jurisdiction of courts of law, *Oliver* v.
*Chamberlain,* 1 D. Chip. 41 ; and it could not, therefore, be
questioned in matters of equity. The power to grant or
withhold the thing sought, carried with it the right of prescri-
bing conditions ; and those conditions being voluntarily assent-

CALEDONIA,
*March,*
1843.

Barnet
*v.*
Passumpsic
Turn. Co.

ed to in order to secure the advantage asked for, a perfect obligation resulted to comply with them.

He further maintained that the appropriation of the road in question to the use of a private company created a legal, or at least, an equitable claim to remuneration, upon the principle that private property ought not to be taken for public purposes without compensation, which he argued was as applicable to the property of a town or other corporation, as to that of individuals.

The opinion of the court was delivered by

WILLIAMS, Ch. J. — The object of this bill is, to compel the defendants to pay the sum of six hundred and fifty dollars, expended by the orators in making a road in the year 1828, which was afterwards surveyed and made a part of the turnpike road of the defendants. The claim of the orators is so intimately connected with the proceedings which have heretofore been had in this court on the subject of the Passumpsic Turnpike, and rests so much on the orders which have heretofore been made, that a brief recital of the former proceedings is necessary to a right understanding of the case, and to explain the grounds on which the court have formerly proceeded, and on which they now decide.

The turnpike was surveyed and laid out at an early day, and, as was very usual with the roads laid out at that time, it was found, after the country became more settled, that a better place for the road might have been selected. On the petition of Ira Goodrich and several inhabitants of Barnet, a committee was appointed, who laid out another road between the turnpike, as made, and Connecticut river, which must have taken the principal part of the travel which had before passed on the turnpike road. This road, thus laid by that committee, was made by the town of Barnet, the orators. Under an act of the legislature, passed in 1822, this court, on the petition of the present defendants, appointed a committee to survey, lay out, and alter the Passumpsic turnpike road, who laid out the same on something over a mile of the road laid out by the committee on the petition of Ira Goodrich, and which was made by the town of Barnet, at the cost of six hundred and fifty dollars. The committee, who thus re-surveyed the turnpike, made a report and return of their

CALEDONIA, doings at the term of this court in 1830.   It was a matter of
March, doubt, and a question upon which the members of the court
1843. were never fully agreed, whether any decision of the court
Barnet was required, to accept the report, or whether the court had
v. any further jurisdiction over the subject after they had ap-
Passumpsic pointed the committee.   The report was, however, retained
Turn. Co. on the docket, and not accepted until the March term, in
1834.   To the acceptance of this report the town of Barnet
objected ; and, in all the controversies about the same, ap-
peared by attorney.

A *scire facias* was instituted, in behalf of the state, against
the turnpike company to repeal their charter.   A trial was
had, first on demurrer, and then on an issue of fact, and a
verdict was returned against the corporation, that their char-
ter was forfeited ; and, in pursuance of a provision in the
statute, they made application to the court in writing, and set
forth reasons why the charter ought not, in equity, to be for-
feited.   The objections to the report of the committee, laying
out and altering the turnpike road, and the application of
the turnpike company, in equity, that the forfeiture should
not be adjudged, were heard together, at the term of this
court in March, 1834.   Before entering up any judgment in
either of the cases, the court required the bond to be execu-
ted and deposited with the clerk, which is set forth in the
orator's bill ; and, on the filing of that bond, judgment was
entered up, that the report of the committee laying the turn-
pike road, be accepted, and that the charter of the company,
in equity, ought not to be forfeited.   The condition of the
bond is, that Stevens, who represented the turnpike com-
pany, should pay the town of Barnet the sum of three hun-
dred and twenty-five dollars and interest, on or before the
first day of April, 1835, and the like sum of three hundred
and twenty-five dollars and interest, on or before the first day
of April, 1836 ; to which there was this proviso, " that the
' town should accept said bond on or before the first day of
' August then next, or said bond shall be void ; and further,
' that the bond shall be deemed and taken to be in full pay-
' ment and satisfaction of all claims or demands in favor of
' said town of Barnet against the Passumpsic turnpike com-
' pany, for making of any road in said Barnet, and accepted
' by said turnpike company as part or parts of their turnpike

'road." The following entry was made on the docket of the clerk, "the bond to be delivered to the agent of Barnet, 'after vote of acceptance of said town." The town of Barnet did not accept the bond until the 11th of November, 1834, more than three moths after the time limited for them to accept. On that day they voted to accept the sum of money mentioned in the bond signed by Henry Stevens and James Gilchrist; and, at the same meeting, they authorized their selectmen to settle with the company concerning the bond, or prosecute the same at their discretion.

The claim of the orators, to the relief asked for in this bill, must be supported, either on the ground that they have an equitable claim against the defendants, arising from their having made the road, which was afterwards covered by the survey of the turnpike, made by the committee appointed by this court, or in consequence of the bond which was left with the clerk for their benefit, as before mentioned. Neither of these grounds are tenable.

In making the road laid out by the committee, on the petition of Ira Goodrich, the town performed a duty to the public, imposed on them by law, — not for their own benefit particularly, or exclusively, but for the use of the whole community. They had no property in the road whatever, more than any other town, or any individual. The burthen of making the road, and of keeping it in repair, was laid on them by law, from considerations of public policy alone. This duty is frequently cast on towns against their wishes, and also against their individual interest. The same power which authorized the laying the road could discontinue it at any time; and the road would revert, not to the town, but to the individuals who are owners of the land. In laying, altering, or discontinuing roads, it has never been thought, or considered, that the towns were entitled to any compensation for the moneys by them expended in making the road. Whenever a turnpike is granted, it is supposed that between the *termini*, they will have to take part or parts of a road already made by towns, and the right to locate a turnpike road on any old highway has been repeatedly recognized by this court in cases reported and not reported. The easement which the public acquired, or the right to pass over a highway, legally made and opened, they may relinquish at any

CALEDONIA,
*March,*
1843.

Barnet
*v.*
Passumpsic
Turn. Co.

CALEDONIA,
March,
1843.

Barnet
v.
Passumpsic
Turn. Co.

time they think proper, or grant it to corporations by them established. *Cutler* v. *Searsburg Turn. Co.* 6 Vt. R. 315 ; *Panton Turn. Co.* v. *Bishop*, 11 do. 198. In the conflicting opinions which the court have heretofore had, on the subject of this claim of the town of Barnet to compensation for making that road, I never understood any of them to say that the town had such a claim, recognized as a legal or equitable claim, which could be enforced in a suit at law or equity. And the judge who gave the opinion in the case of the state against the present defendants, reported in 3 Vt. R. 178, seems to insist rather on the apparent justice of the claim, and that the court should not accept the report, and enable the turnpike company to take the road, until they made some satisfaction to the town for the money expended by them in making this road. It never struck me that it was necessary for the court to accept the report of the committee appointed to alter the Passumpsic turnpike road ; but that, having appointed the committee, their powers over the subject ceased ; nor was it ever made to appear satisfactorily to me, that the town should have any remuneration from the company, inasmuch as they were relieved from the expense of keeping the road in repair, and from the risk which every town incurs from their responsibility to individuals for damages. This whole subject, however, has been passed upon heretofore. The court are now agreed in saying, that the orators have no claim which can be enforced in this suit, independent of the orders before named, founded solely on the ground that they made a public road which was afterwards surveyed and taken as a part of the turnpike road owned by the defendants.

The only inquiry remaining is, whether, in consequence of the bond executed by Mr. Stevens, who is considered as the owner of the turnpike, and which is to be treated as a voluntary bond, procured by the defendants, in pursuance of the orders and proceedings had in this court, at their March term, 1834, already recited, the orators have now any claim against the defendants which the court of chancery can decree. The bond was to be void, unless accepted by the town by the first of August next after it was made. Their acceptance was a condition precedent to its being delivered. The orators did not vote to accept it until the November

CALEDONIA,
*March,*
1843.

Barnet
*v.*
Passumpsic
Turn. Co.

after. Now we cannot consider that the town had no notice of this bond being left for their benefit. They were a party to the proceedings had in relation to the acceptance of the report, and appeared by their attorney; and we all well recollect the long and assiduous attention, and the powerful and excited argument made against the turnpike company by a gentleman since deceased, and for which, it appears, he made charge against the town. Indeed, we have no hesitation in saying that the towns were so far parties to the proceedings had in this court, that they were bound to take notice of any order made by the court in the premises.

If it was proper for the court to do any thing on this bill, it could not be to set up this bond, which has become void by reason of the town not complying with the only condition on which it was to be operative, but by permitting them again to litigate the acceptance of the report before mentioned, and go into an inquiry as to their equitable claim for compensation, which we have already considered as unfounded.

We cannot discover, in this case, any unforeseen event, loss, or omission, which prevented the town from accepting the bond, or any unintentional act or omission arising from ignorance, surprise, imposition, or misplaced confidence, that should entitle them to relief, on the score of accident or mistake. But they have lost their bond and their security at law upon the same, by their own negligence and want of attention, and the court cannot relieve them from the consequence of their non-performance of the condition required. And it is somewhat of a remarkable feature in this case that, although there has been litigation on the subject of this turnpike, and between the orators and defendants, in one shape or another, before the court and the legislature, for so long a time, no call should have been made on the clerk of this court for this bond, while it lay with him, for the benefit of the orators, from March to August, and that no vote should be passed by the town to accept it until November after the session of the legislature, and then accompanied with a resolution instructing the selectmen, their agents, to buckle on the armor for battle, or ground their arms, as they should think proper, and report at their next March meeting, in 1835.

We can see no reasons for relieving the orators from the consequence of their not accepting the bond by the time specified, or to decree them the money they expended in making the road. The consequence is, the decree of the chancellor must be reversed, and the bill dismissed, without cost ; and the chancellor will be directed accordingly.