STATE v. THE VERMONT CENTRAL RAILROAD COMPANY.

*Liability of railroad corporations for nuisances.   Their rights in crossing highways.   Indictment.*

Railroad corporations are liable to indictment for the acts of their officers and agents in erecting and maintaining a common nuisance.

Railroad companies have no right to build their station houses in highways, which they merely cross with their railroad, and the location of which, they do not change. In such cases they have no right to use the land covered by the highway, except for their track crossing; and in this, they are bound to do as little damage to the highway as possible.

The word "unlawfully" is not indispensable in an indictment against a railroad corporation for erecting a nuisance. The words "wrongfully and injuriously" are sufficient.

INDICTMENT, which after setting forth the existence of a public and open highway in the village of Winooski, in the town of Colchester, alleged that the respondent, "heretofore, to wit, on the first "day of January, 1850, with force and arms at Colchester, in said "Chittenden county, unlawfully and injuriously did erect and build "and cause to be erected and built, at and adjacent to the railroad "crossing on said highway in Colchester aforesaid, in and upon "said public highway, two certain wooden buildings of great length "and breadth, wit, to the length of forty feet each, and of the "breadth of twenty feet each, and erected and built and caused to "be erected at the same place divers platforms and plank walks in "and upon said highway, which said wooden buildings have been,

" all the time since the erection thereof, occupied by the said Ver-
" mont Central Railroad Company, as passenger and freight depots
" for the use and accommodation of said Vermont Central Railroad
" Company, which said buildings and platforms so as aforesaid erect-
" ed and built in and upon said public highway, the said Vermont
" Central Railroad Company wrongfully and injuriously did keep
" and maintain from the said first of January, A. D. 1850, until
" the day of taking this inquisition, whereby and by reason of the
" premises, the said public and common highway is greatly obstruct-
" ed and blocked up insomuch that all the good people of this state
" and all others are greatly obstructed and hindered in riding, walk-
" ing, passing and repassing over and along said highway, with
" their teams, horses, and carriages and on foot, and are thereby
" prevented from enjoying said public highway, in as full and ample
" a manner as they were accustomed to do, and of right still
" ought to do—to the great damage and common nuisance of all the
" good people of this state and all others using said highway, to the
" evil example of all others in like case offending and against the
" peace and dignity of the state."

The second and third counts were similar to the foregoing except
that the word " wrongfully" was used instead of " unlawfully"; and
the fourth count, after setting forth the existence of the highway,
alleged that the respondents " on the first day of January, 1853,
" and on divers days and times between that day and the day of
" taking this inquisition, with force and arms, at Colchester, in said
" Chittenden county, wrongfully and injuriously did obstruct, block
" up and encumber said highway, with cars, engines, carts, wagons
" and horses, and wrongfully and injuriously did suffer and permit the
" same to remain in and upon said highway, great and unreasona-
" ble lengths of time, on the days and times aforesaid, by reason
" whereof said highway became and was greatly obstructed and
" blocked up, insomuch that all the good people of this state and all
" others lawfully using the same for a public highway to pass and
" repass thereon were greatly hindered and impeded in their lawful
" occupation, business, travel and pleasure, while traveling along
" and over said highway on the days and times aforesaid, and were
" hindered and prevented from using and enjoying the same as fully
" and freely as they were wont to do, and as they had a right to do,

" to the great injury and common nuisance of all the good people of
" this state, and all others using said highway as aforesaid, to the
" evil example of all others in like case, offending and against the
" peace and dignity of the state."

The respondents moved that the indictment be quashed and dismissed. This motion was overruled, and they then demurred. In both their motion and their demurrer they assigned the following causes :

" 1. That the said indictment, and the several counts thereof do
" not charge the respondent with any offence against any statute of
" this state or at common law.

" 2. That by the act of incorportion of the said Vermont Cen-
" tral Railroad Company, and the public laws of this state, the said
" respondent has a legal right to erect and maintain the buildings
" with their appurtenances mentioned in the first three counts in said
" indictment in the places in said first three counts named.

" 3. That it is not alleged, in either of said first three counts,
" that the erection of said buildings and their appurtenances, and
" the use and occupation, by the respondent of the ground upon
" which said buildings and appurtenances stand are not necessary
" to the construction and proper and legal use by said respondent
" of their said railroad and the necessary and requisite accommoda-
" tions thereof.

" 4. That by the laws of the state this respondent is not subject
" to an indictment for the offence charged in the first three counts.

" 5. That said respondent is not charged in either of said first
" three counts, with the commission of any act, which this respon-
" dent is not authorized by law to perform.

" 6. That it is not alleged in said fourth count that the said high-
" way was obstructed, blocked up, or encumbered, by said respon-
" dent unnecessarily, unlawfully, or further than was necessary and
" requisite to the proper and legal use by the said respondent of its
" said railroad and the proper and legal running of its cars and
" engines thereon, or that said obstructions, were continued by said
" respondent an unnecessary or improper length of time.

" 7. Because the said indictment and each and every count
" thereof is uncertain, informal and insufficient, and because the
" said fourth count is illegally and improperly found in the same

" indictment, with said first three counts, and charges the respon-
" dent with a distinct and separate offence from that charged in
" said first three counts."

The county court, November Term, 1854, — PECK, J., presid-
ing, — overruled the motion to quash and also the demurrer, to
both of which rulings the respondents excepted.

*Phelps & Chittenden*, for the respondents.

The respondents are a corporation organized under a charter
which by its terms is declared to be a public act. This charter
authorizes the company to take any lands necessary for the con-
struction and operation of their road, to the extent of six rods in
width. Neither of the first three counts allege either that the
obstructions complained of are without the limits of the six rods or
that the use of the highway was not authorized by the charter or
necessary to the operation of the road.

The indictment, in all the counts charges the respondent with a
misfeasance, with the commission of a positive act authorized by
its charter, and which can be performed only through the interven-
tion of agents or servants. The offence charged does not involve a
neglect of any duty or obligation imposed by the charter, or any
general law, or nonfeasance. In this case an indictment cannot be
sustained against the corporation. *Benson* v. *Monson & Brimfield
Manuf. Co.*, 9 Metcalf, 562. *State* v. *Great Mill. Manuf. Co.*, 20
Maine 41. *Orr* v. *Bank of U. S.*, 1 Hammond, Ohio 36. Kyd
on Corporations, 225, 226.

The cases where indictments have been sustained against corpo-
rations are cases where corporations had neglected a duty imposed
by their charter. In such cases the neglect is that of all the corpo-
rators, and an indictment properly lies.

The second, third, and fourth counts are deficient. It is not
alleged in either of them that the highway was obstructed, or that
the obstructions were continued in it "*unlawfully.*"

*T. E. Wales*, state's attorney.

An indictment against a corporation will lie as well for a mis-
feasance as a nonfeasance, where it is in the nature of a mere
trespass on land. Ang. & Am. on Corp. 430. *Queen* v. *Great
North of England R. Co.*, 58 Eng. Com. Law. Rep 314.

The tendency of modern decisions has been to make corporations criminally as well as civilly responsible like individuals; and although they could not be indicted for felony or a breach of the peace, still, when they commit a wrong under color of authority conferred on them by their act of incorporation, they will be liable to indictment. *Lyman* v. *White River Bridge Co.*, 2 Aik. 255.

Although the respondent's charter gives them a right to cross highways with their track, it does not authorize them to build their depot buildings in the highway as alleged in the indictment. Secs. 9 and 10 of act incorporating respondents. Laws of 1843, p. 48. *Queen* v. *Scott et al.* 43 Com. Law Rep. 858.

The allegation that the respondents " wrongfully and injuriously" did obstruct, &c. are sufficient to charge them with a criminal act.

The opinion of the court was delivered by

REDFIELD, CH. J. This is an indictment against the defendants for a nuisance, in obstructing a public highway, by building and and maintaining their depots within its limits, and by " unlawfully and injuriously suffering their engines and cars, and also horses, carts, wagons, &c, to remain in said highway, a great and unreasonable length of time." The following questions are made by defendants.

I. That a railroad corporation are not liable to indictment because their agents and officers have erected and maintained a common nuisance; but that the only remedy is against such officers and agents. This view is attempted to be maintained by reasons which really assume a very specious exterior, but which are, as it seems to us, quite at variance with the general course of decisions upon the subject, at the present time. It is said, a corporation, being created for the performance of certain functions and duties, having no power to do a wrongful act, can only be indicted for their nonfeasance of such acts as are required of them in their charter, and the laws governing them, but not for positive misfeasance of their agents, inasmuch as such persons are not their agents for any such purpose.

But this view is diametrically opposed to the uniform current of decisions in this state, in regard to the liability of such corporations. Ever since the decision of *Lyman* v. *White River Bridge Company*,

2 Aiken, 255, corporations in this state have been held liable for torts committed in the prosecution of the business of their incorpotion, as much as natural persons. They may be guilty of trepass, as was held in that case, of trespass on the case, for positive wrongs, as well as neglects ; and one may find any number of cases in England, since they have adopted the American view of the subject, upon the strength of the American cases ; and always, in this country, corporations have been held liable for their torts. Actions, both of trespass and trespass on the case, have repeatedly been maintained in this court, against the different railroad corporations in the state, for various acts of misfeasance, many of which are reported. And if any individual sustained special damage by means of their erecting or maintaining a nuisance, there can be no manner of doubt of his right of action against them, provided this were done in the course of the prosecution of their ordinary charter business, as appears in the present indictment.

And an indictment for a nuisance is only a mode of trying the right, in a public form, the same right which is involved in every private action, for the same reason. And the same course of reasoning, by which it is here attempted to deny the liability of defendants, to an indictment for such tort, also equally excuses them from all liability for all torts, and carries us at once back to the old common law notions upon the subject, of the utter inability of a corporation to commit a tort.

Once allow this proposition, and railroad corporations acquire an immunity which would become as dangerous to themselves as it is unreasonable in itself, and as it probably might become offensive to the public. The case of *Benson* v. *Munson and Brimfield Manufacturing Company*, 9 Met. 562, does not in our opinion, favor any such view of the subject. The fact that the agents of the defendants are equally liable with themselves, argues no incongruity. That is so, in regard to all accessories in misdemeanor. The case of *State* v. *Great Works Milling and Manufacturing Company*, 20 Maine, 41, is directly in point for the defendants ; and it is, in our judgment, radically unsound in principle. The case of *The Queen* v. *The Great North of England Railroad Company*, 58 Com. Law Rep. 314, is equally in point for the prosecution, and is based upon such sensible, broad and comprehensive views of the

subject as to leave very little to be desired by way of argument in its favor. We certainly do not feel it incumbent upon us, after what is there said, and also in Angell & Ames on Corporations, in commenting upon the comparative soundness of the two last cases, to say more upon this point.

II. The indictment charging the defendants, at a road crossing, with entering and maintaining their depots at the point, more or less, in whole or in part, within the limits of the highway, the principal question arises in regard to their rights to do this, where they merely cross and do not change the location of the highway. The other portion of the charge against the defendants of suffering their cars, and engines, &c., to remain an unreasonable time in the highway, depends, probably, upon the former portion of the charge, and upon the right to erect their depots at such point.

It seems very obvious to us, that a railway, by crossing a highway, acquires no right to build their station houses upon the highway. Their right to take six rods in width throughout their whole extent, applies only to the lands of private persons, and not to highways. As to these, if it becomes necessary, by arrangement with the selectmen, or the decision of commissioners, they may take the highway, providing another. But nothing of this kind appears. And not having taken the highway, but only crossed it, they acquired no right to use the land covered by the highway, except for the mere purpose of laying their track crossing, and were bound to do as little damage as possible to the highway. This gives them no more right to build their station houses in such highways, than if they did not cross it. The truth is, the points of intersection with highways are ordinarily most unsuitable points for depots. They should seldom be built at such points. There cannot ordinarily be any necessity for doing so. If it became desirable to build them in such places, the public highway should be changed.

Railroad stations should be approached commonly by private ways, under the control and at the expense of such companies, as well for the convenience of the business of the companies, as the convenience of the public, where this is practicable. One might ask : What would be the effect, if the passenger and freight depots at the most frequented points were in the public streets ? People could not live under it.

And if this is a right at one railroad crossing, it is so everywhere, and its exercise is only limited by the mere will of the corporators. It is bad enough to have all the highways in the state rendered unsafe by the crossings and near approach of such a mode of transportation, without absolutely setting at defiance all other power or control over such highways, at these points of intersection. It is scarcely possible to conceive any more objectionable infringement of the public rights, which is not positively done *mala fide.*

III. We do not think the word "unlawfully" indispensable to the sufficiency of the second, third, and fourth counts. Any other words, as "injuriously and wrongfully," which are found in the bill are equally available and sufficient.

Judgment of the county court affirmed, overruling the motion to quash, and adjudging the indictment sufficient.

The defendants were allowed to plead the general issue, and the case was remanded to the county court for trial.