## STATE *v.* TROY & BOSTON R. R. CO.

*Railroad Co. Obstructing Highway. Lessor. Lessee.*
*Evidence.*

1.  A railroad corporation may be indicted for obstructing a highway.
2.  When a railroad corporation, without law or right, so obstructs a highway by building the road-bed within its limits, that it could be indicted for creating a nuisance, the lessee of such railroad company, from lapse of time, or acquiescence on the part of the town, gains no right to encroach further upon the highway, as the exigencies of its business may require, for the purpose of widening, repairing, and straightening its track; and there is no presumption that the company in taking a part took the whole of the highway, when all the evidence tended to prove that the original obstruction was without authority of law.
3.  And if such lessee, in repairing its track, suffer stone and gravel to run into the highway, and remain there an unreasonable time so as to impede travel, it would be an indictable nuisance.
4.  The defendant having been indicted for obstructing a highway, to show its dangerous condition and the relation of the highway and the railroad, evidence was admissible to prove that there were no cattle-guards at the crossings; and that water had been thrown from the side of an engine upon horses travelling in the highway.

INDICTMENT for obstructing a highway in the town of Pownal. Plea, not guilty. Trial by jury, June Term, 1883, Bennington County, POWERS, J., presiding. Verdict, guilty; and the respondent was sentenced by the court to pay a fine of $100 and costs.

The indictment was found at the June Term, 1879. The State gave evidence showing, that the Southern Vermont Railroad Company, a corporation chartered by the legislature of Vermont in 1848, surveyed and built the railroad in question; that it was built in the years 1856, 1857, and 1858; that it was constructed for a distance of about forty rods wholly within the surveyed limits of a public highway then much used for travel; that the travelled track of said highway as thereupon used was near the

westerly side of said surveyed limits, and part of the way along the bank of Hoosac River, which was the westerly boundary of said highway at said point; that the bed of the railroad was constructed directly along and upon the travelled track, whereby the public were compelled to use a new path for travel, the same being forced to the east near the highway fence, the railroad being between the highway and the river, and a railroad crossing at each end of the forty-rod piece of road, the use of which was unsafe for travel.   The evidence on the part of the State further tended to show, that said Southern Vermont R. R. Co. so built its railroad without taking any steps to acquire a legal right so to do by appraisement of damages, or by providing any substitute highway; that no arrangement was ever made with any town officer in respect thereto, and that when one of the selectmen inquired of Mr. Haupt, the contractor building the road, if they were going to furnish a suitable highway, he replied that they were going to build the road through there and abide the results; that, in 1856, in anticipation of that proposed construction of said railroad it was leased by said company to the respondent, a corporation under the laws of New York, the lease to take effect on the completion of the road, the lessee to make all repairs, and keep the road in operation; that the respondent took possession in 1858, and has since operated and maintained it; that in 1876 the respondent, in view of its increasing business, entered upon a system of general repairs of its road-bed; that it was widened, and large quantities of earth, gravel, and stones were deposited upon the easterly side thereof, which ran down into the highway then used as a travelled path, and that the obstructions rendered it dangerous.   The evidence on the part of the respondent tended to show, that the work was done on the westerly side of the road-bed; that the travelled path of the highway was not encroached upon, or but to a very slight extent, if any; that the work was properly done, and that the repairs were necessary.

The State did not claim but that the railroad was improved by the work, or but what the repairs were necessary; but did claim that the highway was materially narrowed, made more dangerous, and this without right. The respondent gave no evidence tending to show any legal right to occupy said portion of the highway, unless the right to repair in a proper manner impliedly gave it such right; but it did introduce evidence tending to show that during a part of the time the railroad was being built, one of the selectmen of Pownal was a director in the said Southern Vermont R. R. Co., and that he, and the other town authorities, knew just where the road was being built. The State omitted to show that the respondent had ever had notice that the original taking of the highway was wrongful; but did give evidence tending to show notice of objection made to the new encroachments. One witness, against the respondent's objection, was allowed to state that there were no cattle-guards at the crossings, and nothing to prevent stock going on to the railroad. Another witness,—respondent objecting,—having stated that the space between the railroad and highway was "rather narrow," was asked: "Whether you can get beyond the reach of the water when it is thrown out of the steam-chest?" and answered, "They threw water on a young team"—[interrupted].

Q. "You have seen water as it flies from the side of an engine. Now, whether or not, a horse is out of the reach of that stream of water?" A. "I know that water could be thrown upon horses. If I am allowed to answer, I know it has been."

The respondent requested the court to charge the jury:

"1. That the entry upon the highway shown was under a legal right conferred by its charter on the Southern Vermont Railroad Company;

"2. That the building of its railroad on a part thereof did not constitute an obstruction of the highway, except one authorized by statute;

"3. That the entry and constructing of a railroad on the

highway having been authorized by statute, no subsequent act or omission, shown on this trial, would render such entry and obstruction illegal, or an obstruction of the highway;

"4. That, when the Troy & Boston Railroad took possession of this railroad under their lease, after the construction of the road, the presumption was that the Southern Vermont Railroad Co. had legally acquired the right to build it where it was, and the Troy & Boston Railroad Co. would not be liable for maintaining and operating the same until they had had knowledge of the circumstances, or at least that the track was upon the old highway; that there is no evidence that respondent had such knowledge at the time this indictment was found."

The court refused to comply with the foregoing requests except as follows:

"At the time the Southern Vermont Railroad' was built at this point, they entered upon an existing public highway, and so far as the evidence in this case shows, they never made any arrangement with the officers of the town, nor did they provide, without such an arrangement, any by-way for the public travel. Our laws upon this subject provide that a railroad company may, in the construction of their road, appropriate to their use a public highway; but if they do so, they are obliged by law to provide a suitable by-way in place of it, so that public travel will not be interfered with and obstructed any more than is absolutely necessary. The wrongful taking of the highway in the first instance was done by the Southern Vermont Railroad Company; and if any one is answerable for that wrongful taking, it was that company, and not some person who has come in since.

"There is no evidence that the Troy & Boston Railroad has had any notice that the Southern Vermont Railroad Company had wrongfully taken that highway, so that when they came into possession they were not wrongfully in that highway; hence, all that part of the evidence is excluded from your consideration; and you are brought down to the inquiry as to what took place on the occasion in 1876 and 1877, when those repairs were made."

The respondent further requested the court to charge:

"5. That maintaining, repairing, and operating a railroad on a highway by the Southern Vermont Railroad Com-

pany, or by its lessee, on which a legal entry had been made and a railroad lawfully constructed, if properly and prudently done, without unnecessary damage to the highway, does not, nor does either of them, constitute under their charter an unlawful obstruction of the highway;

" 6. That the obstruction complained of, being a permanent and continuing one, made with color of right, that the Troy & Boston Railroad Company, by prudently and properly operating and maintaining the railroad of the Southern Vermont Railroad Company, has not obstructed a highway;

" 7. That if the people have failed to show, beyond a reasonable doubt, that notice of a substantial and continuous obstruction by it to the highway in question of the points indicated in the testimony was brought to the knowledge of the Troy & Boston Railroad Company, that this jury must acquit."

The court declined to charge in accordance with said requests, but charged as follows, on the points therein referred to:

" Looking upon these two roads, the railroad and the highway, as they were in 1876, and without looking back at all or to what took place anterior to that time, you find that this Troy & Boston Railroad was located by the side of this public highway. I think the evidence tends to show that both tracks (the track on the highway and the railroad) were within this space of four rods, that, it was said, was originally taken by the highway itself; but however that may be, the two tracks run very near each other. The Troy & Boston Railroad Company is in the rightful and lawful possession of its right to have its road run through there; and this public highway is a rightful road; the public have a right to use it, and have the right to have it preserved for their use; so that the two tracks standing side by side, and each managed in a certain sense for the public interest, and for the service of the public, each one has the right to say to the other, ' You must not encroach upon me.' The Troy & Boston Railroad Company has no more legal right to place an encroachment upon the track of the highway, than the public authorities of Pownal in charge of that highway have the right to place encroachments upon the railroad; but the officers in charge of each owe to the other

a relative duty to manage their own road in such a way as to work no obstruction to or create any encroachment upon the other; these are the relative rights and duties of the two roads to each other.

"Now, then, the question arises, Did the Troy & Boston Railroad Company, as alleged in this indictment, maintain a nuisance? did they place any obstructions upon the public highway in 1876 or 1877, where this work was done, of such a character or to amount to a nuisance to the public travel?

"The question whether there was a nuisance in this case or not, is for you to determine. It is not pretended that the whole of the highway was taken; but it is claimed that it was so far encroached upon by the deposit of earth, stones, and other material, as to force the travel nearer the fence on the east side, and that in this way the public travel was substantially interfered with. If it was, as this evidence tends to show, then it was a nuisance for which the respondent may be charged under this indictment. But it is all a question for you to say.

"The length of time that such an obstruction may remain upon a highway is not the standard by which to determine whether it was a nuisance or not; an obstruction placed upon a highway for an hour might be as serious and as effectually create a nuisance as if it remained there a day or month. That is not the standard; the test is to be found in the character of the obstruction itself, and not in the time it is left there; so that in determining this question as to the effect of the repairs that were made in 1876 or 1877 upon the highway, you are not to say that an obstruction that rested upon the highway temporarily or necessarily proved that it was not a nuisance; but in that connection the court will tell you that the railroad company has a right that is to be regarded, and that is this: they are servants of the public, they are engaged in the public employment of transporting the people from point to point, and being engaged in that service they owe to the public the duty to have their road-bed in a safe condition, and owing that duty, obviously, they must have the right to repair their road-bed to the end that they may discharge that public duty; they have the right to take all necessary and proper measures to repair their road. If they find it necessary to change a curvature, they have the right to do that, but if they make any encroachment upon the highway or upon any abutting land owner,

they must regard his rights in doing it. In other words, gentlemen, in making their repairs they must do it in a reasonable manner so far as respects the rights of others that are affected thereby, whether those others are the public occupying the public highway, or land owners occupying land along their line; so that in determining this question of what was done in 1876, you are to keep in mind the duty that the railroad owes its patrons, the public, and also the duty which they owe to the officers of the town in which this highway was located in encroaching upon that by obstructions or interfering with the public travel. Now, then, any obstruction placed upon the highway that impedes or delays public travel would be a nuisance. * * * *

"How was it between the two crossings? Was the road filled up two feet or more, and did the employes of that railroad company in doing that work deposit material upon the highway, that was suffered to remain there and impede the public travel? If they did it is a nuisance, or is evidence of a nuisance, and it is for you to say whether it is or not.

"On the other hand, was that track changed as the engineer says? was a cut made at the north crossing and a fill at the south crossing? If it was, it would hardly be possible for the material to run down and form an impediment in the highway.

"Are you satisfied beyond a reasonable doubt, gentlemen, that the track was filled up with material in it, that was suffered to run down upon the highway and obstruct its use and create a nuisance? The State insists also that this track was moved to the east; and this highway thus narrowed up and the opportunities for travel restricted by being forced against the fence. How was that fact? Now, in respect to that, gentlemen, if it is true that the railroad company, as I have already stated to you, respecting its road-bed, its grade, &c., has the right to change their curvature, if such change is necessary to the proper and beneficial use of their road, but in changing it they have no more right to crowd the highway in doing that work than they have to crowd it by changing their grade. They both stand upon the same footing. * * * *

"And in respect to this change of the track, as I have already stated in respect to the change of the grade, if the track was merely moved to the east for the temporary pur-

pose of making repairs, and then brought back as far to the west as it was before, that of itself is very slight, if any, evidence of a nuisance; because it is a right that grows out of a duty which the road has; the duty that the road must make these repairs. Now then, if in the necessary doing of that work the track is temporarily carried to the east, and then brought back as soon as the repairs are made, and the repairs are made as expeditiously as practical, such temporary change of the line is not a nuisance; is not evidence of a nuisance, because the company is doing just what it is bound to do, and it cannot be charged as of a crime for any necessary act in the doing of its proper work; so that, gentlemen, the whole question then is reduced to the single inquiry, of what the railroad company did in respect to any change which it made in its grade or any change which it made in respect to the line of its tracks, and thus placed any obstruction upon the highway that in your judgment amounts to a nuisance."

The respondent further requested the court to charge:

"10. That the remedy by indictment for obstructing a highway under the circumstances disclosed in this case, is not applicable to a road constructed under the charter of the Southern Vermont Railroad Company;

"11. That the entry of and construction by the Southern Vermont Railroad Company of its road in this highway, was an additional burden thereon authorized by law, and does not constitute an offense at common law;

"12. That a railroad having been authorized by the same high power to be built, any ordinary and usual exercise of that power, unless expressly prohibited, does not constitute an indictable offense;

"13. That the provisions of the charter in that behalf are in lieu of proceedings by indictment for obstructing a highway, occupied as disclosed in this case;

"14. That the State has failed to show an offense on the part of the Troy & Boston Railroad Company;

"15. That the facts disclosed, including the lapse of more than twenty years, warrant the jury in finding that a lawful grant, not proved, was made to the Southern Vermont Railroad Company or to lessee;

"16. It is to be presumed from the long acquiescence of the town of Pownal in the actual location and construction

of this railroad, that all the provisions of the law affecting highways occupied in that town had been complied with;

"17. That under its charter and as this law was when the Southern Vermont Railroad was built, it had the right to enter and take the highway the same as other real estate without substituting another road therefor;

"18. That the actual survey and location and building of the road constituted the taking of the land, and if that was done without objection on the part of the town or its authorities, and they permitted the railroad to be built, it then became too late for the town or the State to take advantage of any omission of duty on the part of the railroad by indictment;

"19. The acts of the Troy & Boston Railroad Company in repairing and maintaining this railroad, if proper to be done, and done in a proper and provident manner, are the acts of its lessors, and the respondent is not liable."

The court refused to comply with the foregoing requests except so far as the charge is related above.

To the refusal of the court to charge as requested in its 5th, 6th, 7th, and 8th requests, the respondent excepted, and to the court's refusal to charge in accordance with its other requests, except so far as they were complied with, and to the charge as given, upon said requests, the respondent also excepted.

*Batchelder & Bates,* for the respondent.

It was the right and duty of the company to keep its road-bed in proper and safe condition for the passage of trains and for safely carrying the public over the same.

If, by increase of traffic, it became necessary to widen the bed and change the alignments, in order to safely run its trains, it was its duty to do so.

The respondent was bound by law to run its trains and carry the public over its road. It was bound to exercise all ordinary prudence and caution, both in the running of its trains and in the construction of its road-bed, that the greatest safety might be enjoyed by the travelling public.

This implies the right to repair its road from time to time; to change its alignment and widen its road-bed.

That the public had travelled and were travelling along the foot of the slope of the bed, and had been travelling there for years, perhaps, could not interfere or hinder the railroad company from encroaching upon the track, or even filling it up, provided only it was necessary so to do.

So far as the respondent was concerned, that highway had been condemned for railroad purposes, including the ordinary repairs and improvements usually made, and which might necessarily be expected to be made, and the public, by travelling or being allowed to travel, or drive over that travelled track, could not deprive the railroad of its right when it became necessary to exercise it.

*J. L. Martin* and *A. F. Walker*, for the State.

The obstruction was a nuisance; and a tenant who continues a nuisance is responsible equally with the landlord. Wood Nuis. ss. 77, 268, 271; *State* v. *Woodward*, 23 Vt. 92; *State* v. *Atkinson*, 24 Vt. 448. The respondent was properly indicted and fined. *State* v. *Wilkinson*, 2 Vt. 480; *Richardson* v. *Vt. Cen. R. R. Co.* 25 Vt. 476; *People* v. *N. Y. Cen. R. R.* 74 N. Y. 302; *Commonwealth* v. *Boston & Lowell R. R.* 2 Gray, 54; *State* v. *Vt. Cen. R. R. Co.* 27 Vt. 103; *Commonwealth* v. *Old Colony R. R.* 14 Gray, 93; Pierce R. R. 243, 246; Mills Em. D. ss. 200, 202.

The opinion of the court was delivered by

Ross, J. It is well settled in this State and elsewhere, generally, that a railroad corporation may be indicted for obstructing a highway. *State* v. *The Vt. Cen. R. R. Co.* 27 Vt. 103; Pierce R. R. 243.

It is not contended by the respondent, except inferentially from its requests, that it could not be indicted for such obstruction. But it contends, that it is to be presumed that the Southern Vermont Railroad Company, when it laid out

and built its road for about forty rods wholly within the limits of the highway, took the whole highway, or if not the whole, sufficient of it to allow it to widen, repair, and straighten its road-bed and track from time to time, as the exigencies of its business might require. On the facts, which the evidence of the State tended to establish—and there is no statement in the exceptions of any evidence tending to establish the contrary—we do not think any such presumption arose. The facts which the evidence tended to establish, are, that the Southern Vermont Railroad Company took the highway, so far as it occupied it in constructing its road, without right, without agreement with the selectmen of the town therefor, without the action of commissioners, and without having provided any substitute highway. The statute, R. L. s. 3377, then in force, allowed a railroad corporation to take a highway for the construction of its railroad only upon agreement in writing with the selectmen of the town, or by the award in writing for a substitute highway of the commissioners to appraise land damages, which agreement and award are required to be recorded in the town clerk's office—R. L. s. 3379—and then vest in the corporation the right to take the highway only upon its construction of the substitute highway. There was no evidence in the case tending to show that the Southern Vermont Railroad Company ever acquired the right to take the highway in question by either of the methods given by statute. On the facts and evidence disclosed in the exceptions, it can hardly be doubted that the Southern Vermont Railroad Company might have been indicted for obstructing the highway, for erecting and maintaining a nuisance therein. On general principles, relating to the law of nuisances, the maintenance of a nuisance is the constant creation of a fresh nuisance; and that the lessee of premises on which the lessor has erected a continuing nuisance becomes liable to indictment by continuing to maintain the same, especially after notice thereof. The County

Court held that the respondent, the lessee of the Southern Vermont Railroad Company, finding the railroad constructed over and along the westerly side of the highway, and the highway in use along the easterly side of the old highway had, without notice to the contrary, the right to assume and presume that its lessor had legally acquired the right to occupy so much of the highway as it actually did occupy. With no agreement or award recorded, as required by statute, this holding is as favorable, if not more, to the respondent than it was entitled to, upon the law and evidence in the case. The court as fully complied with the respondent's first four requests as it was entitled to have them answered.

The County Court substantially complied with the respondent's 5th, 6th, and 7th requests, so far as they asked the court to hold and charge that the respondent was not guilty for what the Southern Vermont Railroad Company had done on said highway, nor for continuing the structure placed thereon by that company without being notified that the location and construction of the road in the highway was originally wrongful. It was not entitled to have that part of said requests complied with, which asked for a charge that the original location and construction of the railroad by the Southern Vermont Railroad Company was not an unlawful obstruction of the highway. Every obstruction of a highway by a railroad is unlawful, unless the right to use it for the construction of the railroad is first acquired in the manner pointed out by the statute.

The 8th request, " That if the jury find that the repairs that the respondent made in 1876 and 1877 were necessary and proper to be done, and were made in a proper and prudent manner, doing no unnecessary damage, respondent should not be found guilty," was substantially complied with, so far as relates to the then existing road-bed and track. After telling the jury that any obstruction placed upon the highway, that impedes or delays public travel,

would be a nuisance, the court say: "It would hardly do to say that if in the proper exercise of their right to repair their railroad some gravel ran down on the highway and left a slight impediment to the public travel, that, if it was done prudently by the employes of the railroad company, that that should be called a public nuisance; because in many cases I can conceive such circumstances might necessarily follow from the very work in which they were engaged; but, if in doing their work, stone, gravel, or other material, is suffered to run into the highway, and suffered to remain there an unreasonable time and impede the use of it (such use as the public had the right to enjoy), that would be a nuisance for which these parties might be held answerable under this indictment." This allowed the respondent to repair in a reasonable and prudent manner the railroad which the Southern Vermont Railroad Company had constructed on the highway, but did not allow it to encroach further upon the rights of the public in the highway without being liable therefor. If the respondent could not be held liable for continuing what its lessor had placed in the highway, the foregoing was a reasonable and just statement of its rights and liabilities in regard to repairs upon the then existing road, and in regard to further encroachments upon the rights of the public in what remained of the highway. The same doctrine, substantially, is applied to the respondent's right to repair, or change, the curvature in its track. We discover no error in the charge of the court injurious to the respondent, nor in its refusal to charge as requested. The views already expressed are conclusive that there was no error in the court's refusal to comply with the respondent's remaining requests, 10th to 19th inclusive. The presumptions, which under other circumstances might arise from the long acquiescence of the town, and from the lapse of time in regard to the original taking by the lessor, having been, by virtue of right, embodied in requests 15th and 16th, were rebutted by the evidence of the State, tend-

ing to show that such original taking was without the authority of law. Under the evidence, it would have been error for the court to have complied with these requests. Upon the evidence and circumstances of the case, no error appears in the court's charge, nor in its failure to charge as requested. We discover no error in the admission of the testimony excepted to. It was necessary to give the jury a full picture of the relations of the railroad and highway to each other within the limits of the original highway, in order that they might correctly determine whether the obstructions complained of were a nuisance. This the testimony excepted to tended to furnish.

The judgment is, that the respondent takes nothing by its exceptions, and the sentence determined upon by the County Court, but suspended, is imposed.