FRANK J. LIBBY *v.* CANADIAN PACIFIC RAILWAY COMPANY
ET AL.

May Term, 1909.

Present: MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed July 2, 1909.

*Railroads—Farm Crossings—Elimination by Underpass—Juris-diction of Railroad Commissioners.*

A railroad-highway "crossing," in its primary sense, is the intersection of a railroad and a highway in the same plane, while an underpass is a structure that obviates the necessity of such a crossing; and the "farm crossings" mentioned in our general railroad law refer to surface crossings only.

P. S. 4450, requiring railroads to construct and maintain farm crossings and cattle guards sufficient to turn cattle, does not exact that every farm crossing shall be so constructed as to need cattle guards.

It will be presumed that when land was acquired for a railroad right of way the damages incident to the use of farm crossings were considered in fixing the compensation paid the landowner, regardless of whether the acquisition was by agreement or compulsory proceedings.

The "commissioners" referred to by P. S. 4451, providing that, "if the parties cannot agree upon the plan, manner, or number of grade crossings the same shall be determined by commissioners," are the commissioners appointed by two judges of the Supreme Court, under P. S. 4398, for the appraisal of land damages preliminary to the work of construction.

Neither under P. S. 4611, nor otherwise, have the Railroad Commissioners jurisdiction to order the elimination of a farm crossing at grade by the construction of an underpass.

APPEAL to the Supreme Court for the County of Orleans from an order of the Railroad Commissioners directing the elimination of a farm crossing at grade by the substitution of an underpass. The opinion states the case.

*Cook & Williams* for the petitioner.

*F. E. Alfred* and *William B. C. Stickney* for the peti-
tionees.

MUNSON, J.   The petitioner seeks by this proceeding to
secure the construction and maintenance of an underpass for
use in the driving of his cattle to and from their pasture, apart
from and in addition to the regular farm crossing now existing
and necessary to be maintained for the other purposes of the
farm.   The railroad commissioners considered that jurisdiction
of this matter was given them by No. 126, Acts of 1906, and or-
dered the construction and maintenance of an underpass of
specified dimensions and material.   The defendants claim that
the action of the commissioners was unauthorized.

The statute governing the construction and operation of
railroads provides that ''a person or corporation owning or
operating a railroad shall construct and maintain farm crossings
of the road for the use of the proprietors of lands adjoining the
railroad, and cattle guards at all farm and road crossings suffi-
cient to prevent cattle and animals from getting on the rail-
road.''   P. S. 4450.   Section 23 of No. 126, Acts of 1906, (P. S.
4611) gives the board of railroad commissioners jurisdiction in
all matters respecting ''the construction and maintenance of
proper fences, cattle guards and farm crossings;'' respecting
''the maintenance of the tracks, frogs, switches, gates, signals,
culverts, bridges and other structures of wood or iron over
openings, and rolling stock and equipment, so as to accommodate
the public,'' and so that the road ''may be operated with safety
and in compliance with law;'' and respecting ''the manner of
operating railroads and conducting the business thereof so as
to be reasonable and expedient, and to promote the security,
convenience and accommodation of the public, and to prevent
violations of law and unjust discrimination, usurpations or ex-
tortions.''   The petitioner claims, in substance, that the author-
ity to make this order is directly conferred by the provision
regarding farm crossings and cattle guards; that if not, it is
within the jurisdiction given the commissioners, in the general
terms quoted above, over all matters that pertain to the main-
tenance and operation of the property in its relation to the

public safety; that in any event the provision regarding farm crossings may properly be construed to cover this authority in view of the broadly remedial purpose manifested in the more general provisions.

The commissioners find that the petitioner's crossing is on a heavy grade over which trains going one way pass at great speed, and that a curve in the track above the crossing obstructs the view of an approaching train; that the crossing is unsuitable and unsafe for use in the driving of cattle to and from pasture, and that the safety of the travelling public is endangered by such use; that the driving of the petitioner's cattle across the track at any other point on his land would be fraught with danger to the petitioner, his cattle, and the public; that the construction of cattle guards in connection with the crossing would reduce the danger to some extent, but not enough to justify the continuance of its use for the crossing of cattle; that an underpass will subserve the safety and convenience of the petitioner, and also promote the security of travellers.

The terms "farm crossings" and "cattle guards," used in the provision giving the railroad commissioners jurisdiction of the subject, are the terms by which the duty of construction and maintenance was imposed upon railroads by the act of 1849, and by which the requirement has been continued in subsequent revisions. A crossing of roads, in the primary and natural sense of the word, is an intersection of them in the same plane, while an underpass is a structure which obviates the necessity of a crossing. In a broader sense, the word covers all the means by which the traveller passes from one side to the other of an obstructing line. The farm crossings indicated by the general railroad law are surface crossings, for the cattle guards required in connection with them are to prevent cattle from straying from the crossings along the track. But this statutory connection of cattle guards with farm crossings does not require that every farm crossing be so constructed as to need cattle guards. In fact, this view is precluded by the statute itself, for the requirement of cattle guards applies to road crossings as well as farm crossings, and other sections of the statute authorize road crossings not at grade.

One of the provisions just referred to is now embodied in P. S. 4422, and this section is cited by the petitioner in support

of his contention, but without indicating the bearing claimed for it. The original provision was that a turnpike road or other way, laid out to cross an existing railroad, might be so made as to pass "under or over" it. Acts of 1849, No. 41, §26. It was held in *Central Vermont Railroad Co.* v. *Royalton,* 58 Vt. 234, 4 Atl. 868, that this enactment deprived towns of the right to build highways over a railroad at grade. The section was then amended by inserting the words "or across," and adding a provision that if the road was laid to cross at grade the railroad company might have a hearing before commissioners as to whether the crossing should be at grade or otherwise. Acts of 1886, No. 20. This jurisdiction was transferred to the railroad commissioners by Section 13, No. 118, Acts of 1906.

An extensive jurisdiction over existing highway crossings was given the railroad commissioners by No. 125, Acts of 1906. (P. S. 4544-4550). This act looks to the gradual elimination of grade crossings, beginning with selections from those deemed most dangerous. It authorizes the commissioners to act upon the petition of the selectmen of a town, or of the directors of a railroad corporation, or upon their own initiative in the absence of an application. It requires every corporation operating more than eighty miles of single track to remove at least one grade crossing every year for each eighty miles of road or fraction thereof exceeding forty miles, and every corporation operating less than eighty miles to remove at least one grade crossing every year; and provides for an apportionment of the expense among the State, the town and the railroad company, or between the State and the company if the commissioners act upon their own motion. Provision is also made for relieving a railroad company from the statutory requirement on a finding of the commissioners that its financial condition will not warrant the outlay.

The matter of farm crossings, where the landowner and the company failed to agree regarding them, was originally determined in connection with the allowance of land damages by the commissioners appointed for that purpose. Acts 1849, No. 41, §46; P. S. 4451. The relation between these duties is illustrated by the latter part of the section, which provides that when the cost of a farm crossing will exceed the value of the land to be accommodated the commissioners may refuse to

order the crossing and award damages in lieu thereof. Ordinarily the damages allowed the landowner were determined with reference to the injury he would sustain while in the enjoyment of such facilities of crossing as the commissioners gave him. See *Thorpe* v. *Rutland & Burlington R. R. Co.,* 27 Vt. 140, 148, 62 Am. Dec. 625.

In this case the right of way was conveyed to the railroad company by the orator's grantor some years after the road was built, and this is alleged to have been done in connection with an existing agreement for the maintenance of an underpass for cattle, which agreement the commissioners fail to find. This seems to indicate that possession was taken, and the road-bed and crossing constructed, under some agreement of the parties, and without the action of commissioners. But whether the land was taken by agreement or by compulsory proceedings, it is to be presumed that the incidental damages were considered in fixing the compensation. *Norris* v. *Vermont Central R. R. Co.,* 28 Vt. 99.

The matter to be determined under P. S. 4451 is the plan, manner and number of the farm crossings to which a landowner is entitled. If the parties cannot agree upon these, the commissioners are to determine them. The commissioners referred to are the commissioners to be appointed by two judges of the Supreme Court for the appraisal of land damages, and it is apparent from this that the statute contemplates a determination of the number, style and location of the crossings preliminary to the work of construction. This provision has not been repealed unless by implication, and the revisers have not undertaken to determine this question, but have embodied the section in the public statutes with a note referring to section 4611. This, as we have seen, gives the railroad commissioners jurisdiction in all matters respecting the construction and maintenance of cattle guards and farm crossings. Now, whatever else may be included, does this cover a readjustment of the system of farm crossings on existing roads? This is the question really presented; for the order involves increase of number and change of construction, and is based upon findings that could properly be made in a great number of cases.

It seems clear that this jurisdiction cannot be based solely on the use of the word "construction." If the act authorizing

the elimination of highway grade crossings had not been passed, and if highway crossings had been included in the clause in question, so that the commissioners had been given jurisdiction in all matters respecting both farm and highway crossings,— it would hardly be claimed that the commissioners could require a railroad company to substitute an underpass for a grade crossing on the application of selectmen and an appropriation of whatever land might be needed for any change in the approaches.

By the second clause above quoted the commissioners are given jurisdiction in all matters respecting the maintenance, among other things, of the tracks, and of culverts, bridges and other structures of wood or iron over openings; the word "construction" not being used. It is probable that an underpass is within the class of structures described, and it is true that the jurisdiction conferred by this clause is given with express reference to the safe operation of the road; but there is nothing in this that can be held to confer a broader jurisdiction over the subject of farm crossings than is conferred by the clause already considered.

We find nothing in any of the provisions relied upon by the petitioner that indicates an intention to confer this authority. The fact that the claimed jurisdiction extends over matters originally determined in connection with the allowance of land damages, affords some reason for believing that an intention to confer it would have found expression in some definite provision. In the absence of any definite expression of intention, other legislation of the same session, already referred to, is entitled to special consideration.

The jurisdictional fact is that the use of this crossing as a driveway for cattle is a source of danger to the petitioner and to the travelling public. The same might be said of its use for the drawing of loads of hay, logs, and other bulky and heavy materials; and such a finding would have afforded the same basis for the requirement of a full underpass that the present finding does for the order made. If the commissioners have jurisdiction to order this underpass for cattle, they have jurisdiction to require the substitution of underpasses for farm crossings generally; and underpasses available for all farm purposes may require expenditures as great as do many of the openings

21

for highways. The provision thus construed would authorize a series of expensive alterations of farm crossings, to be carried on contemporaneously with a series of like changes of highway crossings, which alone require an expenditure so considerable that provision was made for the contingency of financial inability. In view of the greater risk of accident attending the use of grade crossings of the latter class, and of the manifest purpose of the Legislature to proceed with their elimination as rapidly as the resources of those charged with the expense will reasonably permit, it is difficult to find in the general language of the later act of the same session an intention to give this further jurisdiction.

The order is vacated; but the petition is sustained on the allegation that the crossing has no cattle guards and the prayer for general relief; and the case is remanded for the action of the board in that behalf.

*Judgment accordingly.*