. CITY OF BARRE *v.* BARRE & MONTPELIER POWER & TRACTION
COMPANY.

October Term, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, AND TAYLOR, JJ.

Opinion filed November 14, 1914.

*Municipal Corporations and Street Railroads—Charter—Con-
struction—Regulation of Charges—Franchises—Power of
Cities — Statutes — Applicability — "Railroads" — Incon-
sistent Acts—Repeal—Power of Public Service Commission
—Transfers—Power of Municipality—Power to Determine
Validity of Franchises.*

Where a street railway company was incorporated by a special Act
of the Legislature, which was expressly made subject to legislative
modifications, and thereafter, and before the company obtained
from a city the franchise to use its streets, a general law was
enacted regulating street railways and repealing all special acts
of incorporation inconsistent therewith, the right of the city, in
granting such franchise, to impose conditions on the company as
to the fares it could charge should be determined by the general
law.

P. S. 4519-4521, providing that any person or corporation proposing to
construct a railway in the streets of a city must file a statement
defining the streets in which it is to be located and procure the
consent of the aldermen as to the location, manner of construction,
and use of such railway, and authorizing an appeal to the Public
Service Commission in case of a disagreement, empowers cities, in
fulfilment of their duty to maintain highways for the public use,
to fix for a .reasonable time *maximum* fares as one of the condi-
tions of the franchise to use its streets, otherwise the matter could
not be decided by the Public Service Commission, for its authority
in that regard is to settle disputes.

Municipalities are not the owners of the highways and streets within
their limits, but it is the policy of the State to delegate to them
very extensive powers in respect thereof, and they are charged
with maintaining them for the public use.

V. S. 3989-3991, now repealed, and relating to the powers of the Railroad Commissioners, had no application to street railway companies.

V. S. 3896, 3897, giving the Supreme Court designated jurisdiction over the tolls exacted by railroad corporations for the transportation of passengers and property, had no application to street railways, or "horse railroads," as they were called in V. S. 3766.

Prior to 1906 street railway companies were not included in the designation "railroads," as used in our statutes, but §41, No. 118, Acts 1906, and No. 126, Acts 1906, which gives the Railroad Commission supervision of all the railroads within the State, whether operated by steam, electricity, or any other power, include street railways.

No. 122, Acts 1906, entitled "An Act to regulate and equalize the charges by railroad, express, parlor and sleeping car companies," is not applicable to street railroad companies.

By the express requirement of P. S. 6317, the Acts of 1906, in case of inconsistency, have precedence over the Public Statutes.

Where a street railway company accepted and acted under a franchise granted by a city to use its streets, and fixing *maximum* fares, the Public Service Commission has no jurisdiction of the matter under §23, No. 126, Acts 1906, giving it jurisdiction over tolls and rates, except where governed by special provisions of law, for the terms of the franchise, having been imposed by the city under delegated legislative authority and accepted and acted upon by the company, became a special provision of law.

A city that has the power to prescribe *maximum* fares as one of the conditions of a franchise granted to a street railway company to use the streets, has also the power to require the company to issue transfers.

The question whether a provision of a franchise, granted by a city to a street railway company, fixing *maximum* fares and requiring the company to issue transfers, is valid, is for the courts and not for the Public Service Commission.

APPEAL IN CHANCERY, Washington County.   Heard at Chambers on August 31, 1914, upon defendant's demurrer to the bill and its plea thereto, *Slack,* Chancellor.   Decree, *pro forma,* dismissing the bill with costs to the defendant.   The orator appealed.   The opinion states the case.

*Elwin L. Scott* and *Richard A. Hoar* for the orator.

The franchise, with its terms and conditions, when accepted and acted upon by defendant, became a contract that it is not at liberty to violate. Nellis Street Surface R. R. §11, p. 105 and notes; Nellis Street Surface R. R. Co., §13, and notes; *City of Rochester* v. *Rochester Railway Co.,* 98 N. Y. App. Div. 521, 3 St. R. R. 707; *People* v. *Chicago etc. Co.,* 18 Ill. App. 125; *Virginia etc. Co. et al.* v. *Com.,* 103 Va. 644, 3 St. R. R. 856; *Mayor etc. of Borough of Rutherford* v. *Hudson River Traction Co.,* 4 St. R. R. 719; *Cincinnati etc. Co.* v. *Stahle,* 7 N. E. 551, 4 St. R. R. 266; *Inhabitants of City of Trenton* v. *Trenton St. Ry. Co.,* 72 N. J. L. 317, 4 St. R. R. 772; *West Bloomfield Township* v. *Detroit United Ry.,* 5 St. R. R. 515; *Oklahoma City* v. *Oklahoma Ry. Co.,* 20 Okl. 1, 6 St. R. R. 781; Constitution of the U. S. Art. 1, Sec. 10, page on Contracts, Vol. 3, §§1741 and 1756 and notes; *Wright et al.* v. *Milwaukee Elec. Ry. & Lt. Co.,* 36 L. R. A. 47; *Mayor etc.* v. *North Jersey St. Ry. Co.,* 72 N. J. L. 383, 4 St. R. R. 711; *Atkins & Co.* v. *Randolph,* 31 Vt. 226; Booth on Street Railways, §§8 and 9 and notes; *State ex rel. Dennison* v. *Seattle etc. Ry. Co.,* 7 St. R. R. 889, 116 Pac. 638; *Mayor, Alderman etc.* v. *Third Ave. R. R. Co.,* 117 N. Y. Ct. App. 405; *Peterson* v. *Tacoma etc. Co.,* 7 St. R. R. 120, 111 Pac. 338; *Lange* v. *LaCross etc. Co.,* 1 St. R. R. 834; *Selectmen of Westford* v. *Dedham & Franklin St. Ry. Co.,* 209 Mass. 213; *Jeffers* v. *Mayor etc. of Annapolis,* 6 St. R. R. 780; *Vining* v. *Detroit etc. Co.,* 1 St. R. R. 366, 95 N. W. 542; *Township of Grosse Pointe* v. *Detroit etc. Ry.,* 130 Mich. 363; *City Ry. Co.* v. *Citizens St. Ry. Co. et al.,* 52 N. E. 157; *City of Monroe* v. *Detroit, etc. Ry.,* 143 Mich. 315; *Kansas City* v. *Kansas City Belt Railway Co. Apt.,* 187 Mo. 146; *Blocki* v. *People,* 220 Ill. 444; Nellis Street Railways, 2nd. Ed. §§21, 46; Booth on St. Railroads, §52 and notes; *State ex rel.* v. *Madison St. R. R. Co.,* 72 Wis. 612; Nellis Street Surface R. R. §9, p. 36, and notes and cases cited; *City of Camden* v. *Public Service Ry. Co.,* (N. J.), 82 Atl. 607, 8 St. R. R. 82.

*Benj. N. Johnson, F. E. Gleason,* and *W. B. C. Stickney* for the defendant.

The establishment of rates is a wholly legislative function, and so it is the Public Service Commission, not the courts, that has jurisdiction of this question. *McChord* v. *Lewis & Wash.*

*R. R. Co.,* 183 U. S. 483; *Prentiss* v. *Atlantic Coast Line,* 211
U. S. 210; *Knoxville* v. *Water Co.,* 212 U. S. 1; *Lewis* v. *Wash.
R. R. Co.* v. *Garrett,* 231 U. S. 298; *State* v. *Central Vermont Ry.,*
81 Vt. 359; *Sabre* v. *Rutland R. R. Co.,* 86 Vt. 347; *Bacon* v.
*Public Service Commission of Vermont,* 232 U. S. 134; *Spring-
field* v. *Springfield St. Ry.,* 182 Mass. 41; *New Orleans* v. *New
Orleans Water Works,* 142 U. S. 79; *Reagan* v. *Farmers' Loan
& Trust Co.,* 154 U. S. 362; *Atlantic Coast Line* v. *N. Car. Corp.
Commission,* 206 U. S. 1.   And the delegation of the legislative
power to regulate rates exists only when given expressly or by
necessary implication.   *Cin. No. & Tex. Pac. Ry.* v. *Int. Com.
Com.,* 162 U. S. 184; *Int. Com. Com.* v. *C. N. O. & T. P. Ry. Co.,*
167 U. S. 479; *Old Colony Trust Co.* v. *City of Atlanta,* 83 Fed.
39; *City of Atlanta* v. *Old Colony Trust Co.,* 88 Fed. 859.

The city when granting the franchise to use its streets could
not legally prescribe maximum fares and require transfers.   *Keefe*
v. *Lexington & Boston St. Ry. Co.,* 185 Mass. 183; *Selectmen of
Wellesley* v. *Boston & Worcester St. Ry.,* 188 Mass. 250; *New-
comb* v. *Norfolk Western Street Railway,* 179 Mass. 449; *Wor-
cester* v. *Worcester Consolidated Street Railway,* 192 Mass. 106;
*Fisher* v. *McGirr,* 1 Gray 1.

HASELTON, J.   This is a bill in chancery.   The city of Barre
alleges that, by the terms of the franchise under which the de-
fendant company operates its railway in the streets of the city,
the company is limited to the charge of a five cent fare for a
ride upon its lines within the city limits, and is obligated to give
transfer tickets to all lines within the city limits.   The bill
alleges that the company has published notices that after a date
named it will raise the fare to six cents.

The bill seeks among other things by an injunction both
restraining and mandatory to prevent the defendant company
from raising the fare for one passenger over its lines within the
city limits above five cents and to compel it to give transfer
tickets to its own lines within the city limits, and the orator
seeks further to restrain the defendant in respects not insisted
upon in the brief of the orator.

The defendant company filed a demurrer and a plea.   The
grounds of the demurrer are: First, that the orator's remedy is
at law, by way of application to the Public Service Commission
of Vermont, and, secondly, that the provision of the franchise

limiting the charge for each fare within the city limits to five cents and providing for transfers was and is void.

The plea brings before the Court private acts of legislation throwing light upon the question of the validity of the provision in the franchise respecting fares and transfers, and also sets out that the defendant, in accordance with P. S. 4533, has filed with the Public Service Commission of Vermont and posted notices of the proposed increase of fares; and so the defendant in its plea says that an injunction would interfere with the jurisdiction of the Public Service Commission.

The case was heard on the orator's motion for a temporary injunction, and, in consideration of the facts set up in the bill, the defendant was enjoined from raising the fare upon its cars in the city of Barre above five cents for each passenger, and thereafter the cause came on for hearing upon the bill and the demurrer and plea of the defendant, and the bill was dismissed *pro forma* and without prejudice for the purpose of expediting the cause, and thereupon, an appeal being taken by the orator, the temporary injunction was renewed.

The defendant, under a different name, was incorporated by No. 198 of the Acts of 1892. Early in 1896 a franchise was granted it by the city of Barre and accepted by it for the location and operation of a street railway in the city, upon terms as to its location, construction and use, among which was a provision that the fare for riding upon the lines of the company within the city limits should not exceed five cents and that the company should give transfer tickets to all of its own lines. It is not necessary to examine the charter of the company to determine its authority in respect to street railways, for the charter was expressly made subject to modifications by the Legislature, and before the action taken in 1896, the Legislature had passed a general law regarding street railways which repealed the provisions of special acts of incorporation inconsistent with the general law. Acts of 1894, No. 86; P. S. 4519, 4520, 4521, 4530; *City of Burlington* v. *Burlington Traction Co., and Railroad Commissioners,* 70 Vt. 491, 493, 41 Atl. 514.

The relevant provisions of this Act of 1894, which must be read into the defendant's charter, directed that a person or corporation proposing to construct a railway in any of the streets of a city in Vermont should file with the aldermen of the city a statement defining the streets and portions thereof in which the

railway was to be located, and describing the tracks and methods of construction of the railway, the location of the poles and wires intended to be used and also the kind of power to be used; that before beginning the construction of the railway the permission of the aldermen must be obtained for building and operating the railway in the streets described in the statement; that if the person or corporation proposing to construct the railway should fail to agree with the aldermen as to the location, manner of construction or use of such railway either party might apply to the railroad commissioners; and that upon such application such commissioners should after hearing upon notice make a final decision upon the questions presented to them.

Here the permission of the city authorities of the city of Barre to construct and operate a street railway was obtained by the defendant under an agreement made in 1896 which embodies, as one of its terms, the provision as to fares and transfer tickets hereinbefore referred to.   The agreement was for a limited time and, so far as appears, reasonable time which has not yet expired.

The defendant now contends that the provision as to fares and transfers was never valid on the ground that the city authorities never had authority to deal with those matters, and that so the railway company had a right to accept and hold its franchise without any obligation to comply with its agreement in respect to fares and transfers.

It is conceded that the Legislature might have delegated to cities and towns the power which the city of Barre assumed to exercise; but it is contended that the power was not so delegated, and that the power to make a valid agreement as to the use of an electric street railway cannot fairly be construed as a power to make a valid agreement as to fares for riding upon such railway. Towns and cities are not the owners of the streets and highways within their limits, but it is the policy of this State to delegate to municipalities very extensive powers in respect to highways and their use by the public. *City of Montpelier* v. *McMahon,* 85 Vt. 275, 281, 81 Atl. 977; *Town of Bristol* v. *Palmer,* 83 Vt. 55, 74 Atl. 332, 31 L. R. A. (N. S.) 881; *Slicer* v. *Hyde Park,* 55 Vt. 481.

Charged as they are with the duty of maintaining highways for the public use, we think that the statute under consideration permitting municipalities to agree with street railway companies

as to the use of their railways in the streets has reference primarily to the terms of their use by the public and necessarily imports the right to make an agreement for a reasonable time as to the fares that shall be charged as a condition of granting to street railway companies the right to construct and operate railways through the streets., Unless the city authorities here had such power there was no way in which the matter of fares could be brought before the railroad commissioners. *City of Burlington* v. *Burlington Traction Company & Railroad ' Commissioners,* 70 Vt. 491, 41 Atl. 514. The act we are considering gave the commissioners no authority except in case of a disagreement between the city and the company as to some matter upon which they had a right to make a valid agreement, nor had the railroad commissioners at that time any authority over the matter by virtue of any other provisions of the statute, though the contrary is claimed in reliance upon sections 3989, 3990, and 3991 of the Vermont Statutes then in force, for such powers as those sections conferred had no reference to street railways, as appears by the terms of the act of which they are a part. *Omaha &c. Ry. Co.* v. *Int. Com. Com.,* 230 U. S. 324, 335, 336, 57 L. ed. 1501, 33 Sup. Ct. 890, 4 L. R. A. (N. S.) 385.

But it is claimed that the defendant's contention is reinforced by the fact that by sections 3896 and 3897 of the Vermont Statutes the Supreme Court had a certain jurisdiction over the tolls upon passengers and property carried by a railroad corporation; but these sections had no reference to street railroads,—horse railroads as they are called in Sec. 3766 of the Vermont Statutes.

Under the Vermont Statutes if a railroad, other than a street railroad, found it necessary to lay out its road along a highway it was necessary for it to provide a substitute highway. V. S. 3833; *State* v. *Troy & Boston R. Co.,* 57 Vt. 144, 154; *State* v. *Vermont &c. R. Co.,* 27 Vt. 103, 109.

True, the charter of the defendant company, No. 198 of the Acts of 1892, which contemplated that the company might build electrical railways elsewhere than in streets, made the general railroad laws of the State applicable to the corporation; but the charter provided that the company should comply with all lawful ordinances and regulations as to the use of streets, and, as we have seen, its charter in respect to the use of streets was modified and amended by the Act of 1894, so that in that regard it was

governed by the provisions of the act already discussed, under. which the agreement or franchise in question, including the provision as to fares, which we hold to have been valid, was made.

But it is said by the defendant that, if the limitation as to fares was originally valid, the limitation is of no present importance because of recent legislation giving the railroad commission, now the Public Service Commission, jurisdiction over the matter of railroad rates.

To speak generally and with a recognition of possible exceptions, there is no ground for contending that street railways or street railroads are included in the designation of "railroads" by the Legislature prior to 1906.

In the case of the *Rutland R. Co.* v. *Saxtons River Street Ry. Co.,* 73 Vt. 20, 50 Atl. 636, the defendant company was treated as a railroad within the provision of the Vermont Statutes relating to the crossing and connection of railroads; but this was because of the provisions of its charter which, notwithstanding its name, made it a railroad in the general sense.

In 1906 there was much legislation relating to railroads and to the railroad commission, and some of the acts of the early part of the session of that year were superseded by later acts of the session.

Act No. 122 of that year, approved December 7, 1906, and entitled "An Act to regulate and equalize the charges by railroad, express, parlor and sleeping car companies,". a part of which is P. S. 4533 under which the defendant has filed and posted its notices, is not applicable to street railway companies, as appears by a mere reading of the act, and though the section has subsequently been amended the amendment is here unimportant. By an Act approved six days later, that is December 13, 1906, it was provided that the word railroad or railroads as used therein should apply to all railroads in the State whether operated by steam, electricity, or any other power; and· an Act approved the next day, December 14, 1906, being No. 126 of the Acts of 1906, gave the railroad commissioners supervision of all railroads within the State whether operated by steam, electricity or any other power in so far as such supervision might be necessary to enable the commission to perform the duties and exercise the powers conferred upon it. We assume that in this broad provision, railroads or railways operated in the streets of a city are included, and that the duties and powers of the railroad commis-

sion, now the Public Service Commission, extend to street railways and to street railway companies. The significant section is 23 of No. 126 of the Acts of 1906. The Acts of 1906 are incorporated into the volume known as the Public Statutes, but as that is a matter of editing we think that, however carefully the work was done, it is better in this discussion to distinguish between the Public Statutes of 1906, in the strict sense, and the Public Acts of that year, since, though both are incorporated in the volume known as the Public Statutes, the Public Acts of that year are to be construed in case of inconsistency as taking precedence. P. S. 6317. The wisdom of our course in this respect is shown in a note of the commissioners who edited the work, inserted at the foot of page 856, wherein they say that, since there is some question as to whether one section supercedes another, both are inserted unchanged. See *Libby* v. *Canadian Pac. Ry. Co.*, 82 Vt. 316, 320, 73 Atl. 593.

These remarks sufficiently meet a suggestion in the defendant's brief that if the Act of 1894, (P. S. 4519, 4520, 4521) gave municipal boards the authority claimed by the orators, these sections would have been modified when in 1907 they were incorporated into the "Public Statutes" in connection with the Public Service Commission Act of 1906.

Section 23 of No. 126 of the Acts of 1906 (P. S. 4611) gives the railroad commission jurisdiction over the matter of tolls and rates. However, the section provides that nothing therein shall be construed as affecting special provisions of law relating to matters covered by the section; and as the franchise of the defendant company was granted in 1896, or 1897, by virtue of delegated legislative authority, it, together with its accepted terms and conditions, became a special provision of law, and as such it was not affected by the statutory provision of 1906 to which we have referred. *Sabre* v. *Rutland R. Co.*, 86 Vt. 347, 353, 85 Atl. 693; *Libby* v. *Canadian Pac. Ry. Co.*, 82 Vt. 316, 320, 73 Atl. 593; *Selectmen of Westwood* v. *Dedham & F. Street Ry. Co.*, 209 Mass. 213, 95 N. E. 81.

If the Legislature had undertaken to provide a method by which the defendant could release itself from its undertakings, a grave constitutional question would present itself. *Grand Trunk Western Ry.* v. *South Bend*, 227 U. S. 544, 57 L. ed. 633, 33 Sup. Ct. 303, 44 L. R. A. (N. S.) 405; *Cleveland* v. *Cleveland City Ry. Co.*, 194 U. S. 517, 534, 536, 48 L. ed. 1102, 24 Sup. Ct.

756; *Detroit* v. *Detroit Citizens' Street Ry. Co.*, 184 U. S. 368, 389, 46 L. ed. 592, 22 Sup. Ct. 410.

The matter of transfers requires here no separate consideration. The agreement in that regard is inseparably bound up with that as to fares. We construe the provision in that regard as it was construed in the city of Montpelier against this defendant, 76 Vt. 66, 56 Atl. 278.

But the defendant contends, or rather suggests, in its brief that though the condition in the franchise as to fares and transfers may have been valid when the franchise was granted and may now be valid, nevertheless, it is within the jurisdiction of the Public Service Commission, and not of the Court, to determine how this is. But the law is otherwise. The streets of a municipality are emphatically under its control, and such agreements in respect thereto as it makes, by virtue of legislative authority, it may appeal to the courts to enforce, and here the jurisdiction of the court of chancery with its injunctive power was properly invoked.

It is not within the jurisdiction and power of the Public Service Commission to absolve the defendant from the obligations it undertook in obtaining its franchise, since these obligations were entered into under statutory authority, and since the Legislature, if we assume that it could constitutionally do so, has not undertaken to confer such jurisdiction and power. There is, we note, nothing in the bill or plea to indicate that the Public Service Commission asserts or assumes any such jurisdiction or power.

We have spoken of the right which the defendant acquired in the streets as a "franchise." The use of the word in this sense has been criticised, but we have employed the term used by counsel; and while it is something different from a franchise to be a corporation, there is nothing misleading in its use.

*The pro forma decree is reversed and the cause is remanded with directions that, unless further proceedings under P. S. 1317 are applied for in the court of chancery and there permitted, a decree be issued enjoining the defendant, so long as the agreement relating to fares, contained in the franchise, continues in force, from charging or collecting more than a five cent fare for each ride of a passenger upon the defendant's lines within the limits of the city of Barre, and commanding the company to*

*issue transfer tickets so that the payment of one fare by a passenger shall entitle him to one ride over all the company's lines within the city of Barre.*