BURLINGTON LIGHT & POWER COMPANY *v.* CITY OF BURLINGTON.

May Term, 1918.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ.

Opinion filed November 19, 1918.

*Municipal   Corporations—Streets—Rights   of   City—Electric Transmission Line—Use of Streets—Vested Right—Power to Revoke Right—Taking of Property Without Compensation—City's Use of Poles of Electric Company—Ordinances —Construction—Constitutionality—Ordinance Giving City Right to Use Poles of Private Company—Harmless Error— Validity of Contract—Question for Court—Evidence.*

A city has no property right in land taken for a highway within its limits; it does not even own the easement, that being in the public.

A city has no proprietary right of compensation for the additional burden created by a line of poles and electric wires in its streets; the right to grant the privilege, and to fix the terms and conditions, of so occupying the streets being primarily with the Legislature.

Where the right of the plaintiff to occupy the streets of the city of Burlington with its electric transmission lines had become vested before the city was given the charter right to fix conditions and regulations for the use or occupancy of its streets by electric light and power companies, the city could not, by a subsequent ordinance, revoke or infringe that right.

Where the plaintiff had acquired the vested right to occupy the streets of a city with its electric transmission lines, an ordinance giving the city the right to use the top gain of plaintiff's poles for its own electric light and power wires would amount to a taking of its property without compensation.

In construing a city ordinance, the Court will look for the intention of the city council as expressed by the language employed, read in the light of the surrounding circumstances; and it will be presumed that the council did not intend what it had no authority to do.

If, without doing violence to the fair meaning of its language, a city ordinance can be given a construction that will save it from a constitutional objection, it will be so construed.

A city ordinance reserving to the city for city purposes the top gain of every pole erected for sustaining wires in the public streets, did not contemplate the use of the top gain of poles already erected for its electric light and power wires, when, at the time the ordinance was passed, its fire alarm system was the only system of wires owned and operated by it.

The referee's interpretation of the city ordinance was harmless because it was not binding upon the court, and because it accords with the interpretation of the Supreme Court.

The validity of a contract with a city, claimed to be invalid under an ordinance, is a question of law for the court.

The admission of evidence of the income of the defendant's electric light plant for a certain year was harmless.

*Query.* Can parties ever concede a fact into the record and at the same time reserve a valid exception?

ACTION OF SPECIAL ASSUMPSIT. Plea, the general issue. Heard on report of referee, and defendant's exceptions thereto, in vacation after the September Term, 1917, Chittenden County, *Waterman,* C. J., presiding. Judgment, *pro forma,* for the plaintiff. The defendant excepted. The opinion states the case.

*Hamilton S. Peck* and *Ezra M. Horton* for the defendant.

*Charles H. Darling* for the plaintiff.

The city in making the contract was acting in its private or proprietary capacity as distinguished from its public, political or governmental capacity. *Styles* v. *Newport,* 76 Vt. 154; *Buchanan* v. *Barre,* 66 Vt. 129, *Gregsten* v. *City of Chicago,* 36 Am. St. Rep. 496; *Illinois Trust & Savings Bank* v. *City of Arkansas,* (C. C. A.) 76 Fed. 271; *Safety Insulated Wire &*

*Cable Co.* v. *Baltimore,* (C. C. A.) 66 Fed. 140; *Ex parte Goodrich,* (Col.) Ann. Cas. 1913 A, 56; *Los Angeles Gas & El. Co.* v. *City of Los Angeles,* 241 Fed. 912.

TAYLOR, J.    The plaintiff seeks to recover a balance claimed due from the defendant under the agreement hereinafter referred to.    The case was heard in the court below on the report of a referee and exceptions thereto.    The exceptions and defendant's motion for judgment on the report were severally overruled, and a *pro forma* judgment for the plaintiff was rendered. The defendant brings exceptions.

The referee reports, in substance, as follows:    Prior to December, 1904, the plaintiff was supplying a large part of the electric current for lights and power used by the city of Burlington and its inhabitants, and for that purpose had erected poles in most of the streets of the city.    Pursuant to authority conferred by the Legislature in 1902 (No. 213, Acts of 1902), at a meeting held in June, 1903, the city voted to construct, or purchase and maintain, an electrict light plant, and empowered the city council to do all things necessary to carry the vote into effect.    In July, 1904, the board of aldermen, who, with the mayor, constitute the city council, appointed three of their number, comprising the street committee, to have charge of the construction of an electric light plant.    In connection with the installation of the city plant, this committee applied to the plaintiff for the privilege of attaching a part of the city's transmission lines to the plaintiff's poles to save expense and avoid the duplication of poles in the streets.    To that end, on December 8, 1904, the committee and the mayor, acting for the city, entered into the agreement which is the basis of this suit.

It will not be necessary to quote the agreement at length. It recites that the plaintiff was operating an electric plant in and around the city of Burlington, and in connection therewith had erected poles within the city limits; that the city had attached its fire alarm and police signal wires to the top gain of said poles and desires to attach thereto its electric circuits, and that the plaintiff desires to afford the city such facilities upon equitable terms.    Continuing, the agreement provides that the light company (the plaintiff) and the city each grants to the other license and permission (with certain restrictions not ma :erial here), for the use of all poles then or thereafter owned by

them, respectively, in the city of Burlington; to the city, the right to attach the wires of its constant current and constant potential circuits to the top gain of the poles of the light company, and to the light company, the right to attach its similar wires to the lower gains of the city's poles. As compensation each is to pay the other twenty cents per annum for each wire so attached, not to exceed one dollar per pole. It is stipulated that the provision as to payments shall not apply to the fire alarm and police signal wires of the city used only for city purposes, and, further, that existing or future rights acquired by the city under its ordinances shall revive upon the termination of the contract. The contract is to continue in force for ten years from its date, and thereafter until terminated by either party on six months' notice in writing.

The following resolution was adopted by the board of aldermen February 6, 1905, and received the approval of the mayor February 28, 1905: ''Resolved by the board of aldermen of the city of Burlington: That the street committee, composed of Aldermen Morgan, Willard and Reeves, having in charge the construction, installation, and equipment of the municipal electric plant now in process of construction, are hereby authorized and empowered in behalf of the city of Burlington to execute a written application or applications to the New England Telephone and Telegraph Company, and the Burlington Light and Power Company, respectively, to make attachments of the wires of the constant current and constant potential circuits, belonging to the city of Burlington, to the first or top gain on the poles of said companies, under the terms of the respective contracts in writing now in force between the city of Burlington and the said New England Telephone and Telegraph Company and the said Burlington Light and Power Company, respectively, which contracts bear date the 8th day of December, 1904, * * * giving to said committee full power and authority to execute in the name of the city of Burlington all applications, demands, notices or other instruments in writing necessary to carry out the provisions of this resolution and said contracts.''

Acting under said contract the mayor and street committee made application for permission to attach the wires of the city to plaintiff's poles, and upon permission being given made such attachments where it was found convenient. In places the city found it advisable to erect its own poles; and where the plaintiff

had no poles previously erected it sometimes attached its wires to the city's poles. Relying on the contract and the assurance of receiving compensation for "hitches" to its poles, the plaintiff rearranged its lines through the city and rebuilt them on certain streets. The city used more of the plaintiff's poles than the latter used of the city's poles, so that the balance for compensation was at all times in favor of the plaintiff. The balance was paid by the city without objection at the end of each year to and including the year 1909. The city continued to use the plaintiff's poles to the time of the hearing before the referee, but declined to pay the annual balances due the plaintiff under the contract, and it is for the recovery of such balances that this suit is brought. At the time of the hearing before the referee the city had not taken steps to terminate the contract. The electric plant of the city does a commercial business, furnishing electric current to private individuals in competition with the plaintiff.

The defendant attacks the validity of the contract, and claims that it is under no legal obligation to pay for attaching its wires to the plaintiff's poles. It bases its refusal to pay upon the charter and ordinances of the city, and relies particularly on the following ordinance: "The fire alarm telegraph in this city shall be considered as apparatus connected with the fire department, and shall be under as full control of the department as the apparatus commonly used by the fire department for the extinguishment of fires in the city. The top gain of every pole erected for sustaining wires in the public streets, or on city property, shall be reserved for the city for city purposes." This ordinance was adopted in March, 1895, and was re-enacted in the revision of the city ordinances in 1897 as Section 23 of Chapter VI, entitled, "Fire Department."

The defendant's claim is that the ordinance gave the city the right to the top gain of all poles in the streets and public places of the city for all purposes for which the city should at any time desire to make use of it; that the city council had no power to waive compliance with its requirements by contract, nor to alter or set it aside by resolution; and that any contract in derogation of the right secured to the city by the ordinance is null and void. In short, the claim is that under this ordinance it was impossible for the officers of the city to make a valid contract with the plaintiff for the use of the top gain of its poles, and that, by virtue of the ordinance, the plaintiff was compelled

to permit the city to use its poles as provided in the contract without compensation.

The adoption of the resolution by the city council and subsequent action thereunder amounted to a ratification of the contract, so there is no basis for the claim that the street committee acted without authority from the mayor and aldermen. For the purposes of this discussion we may adopt the defendant's view and assume, without deciding, that the resolution had no amendatory effect upon the ordinance, leaving the validity of the contract to be.tested in the light of the existence of such an ordinance. Nor do we find it necessary to consider the defendant's claim that the city officers would have no authority to bargain away rights secured to the city by such an ordinance, or to waive them by resolution; but we pass at once to the question whether the ordinance gave the defendant such a right in the plaintiff's poles as it now claims.

As the source of legislative authority for an ordinance of the scope such as the defendant claims this to have, our attention is called to the revised charter of the city of Burlington enacted in 1896. It does not appear that the city had any special authority in regard to the location of poles and lines of wires in its streets prior thereto. It was then provided that the city council should have power "to fix, demand, impose and enforce such terms, conditions and regulations for the use or occupancy of any street or highway in the city" by certain companies, including electric power and electric lighting companies, "as should be just and reasonable, including the payment of money for the privilege," with an appeal to the courts in case of a disagreement. No. 148, Acts of 1896, sec. 53, subd. XLIV. If the ordinance lacked charter authority when it was originally adopted, it is not open to that objection so far as material here, for the amended charter took effect before the ordinance was reenacted in 1897.

Defendant's counsel characterize the city's control over its streets as "sovereign"; but this is manifestly an exaggeration. Before its charter was amended the city had no greater power in this regard than towns and cities generally; and thereafter its additional authority is circumscribed within bounds that are just and reasonable. It is argued that the use of the streets by private corporations for pole lines subjects them to an additional servitude for which a charge may properly be made; that the res-

ervation of the ordinance was intended as the equivalent of a money compensation for the additional burden; and that the use of its poles was the only compensation that the city had for the use of the streets by the plaintiff. But the defendant's poles and wires were installed in the streets before the ordinance was adopted and, nothing to the contrary appearing, it must be taken that they were rightfully there. The defendant takes no account of the time when the poles were erected, but insists that the reservation covers all poles regardless of when they were placed in the streets. The plaintiff having occupied the streets with its lines before the city acted, or had special authority to act, in the premises, the controlling question in this case is not the right of the city to provide by ordinance for the reservation of the right to the use of poles thereafter erected in the streets, as a condition of their being placed there, but the right to impose such a use upon the property of the plaintiff that had already been admitted to the streets under legislative authority with the acquiescence of the city.

Defendant's counsel misconceive the rights of the city in its streets. It has no property right in land taken for a highway. It does not even own the easement, which is in the public. If an additional burden is created by a line of poles and wires in the streets, the city has no proprietary right of compensation. The right to grant the privilege of occupying the streets as the plaintiff was doing and to fix the terms and conditions thereof is primarily with the Legislature. *Town of Barnet* v. *Passumpsic Turnpike Co.*, 15 Vt. 757. The Legislature delegated certain power in this regard to the city council of Burlington in the amended charter of 1896; but when the plaintiff's lines were being constructed the city government had no such power. Before the ordinance in question was adopted the right of the plaintiff to occupy the streets of the city with its lines had become vested, and the city council could not, by a subsequent ordinance, revoke or infringe that right. *Rutland Electric Light Co.* v. *Marble City Electric Light Co.*, 65 Vt. 377, 380, 26 Atl. 635, 20 L. R. A. 821, 36 Am. St. Rep. 868; *City of Barre* v. *Perry & Scribner*, 82 Vt. 301, 309, 73 Atl. 574.

It follows that, as to poles already erected, if the ordinance contemplated the taking of the top gain of plaintiff's poles for the purpose now claimed, it would amount to a taking of its property without compensation. At the time the ordinance was

adopted the fire alarm signal system was the only system of wires owned and operated by the city. These wires were attached to the plaintiff's poles, but under what circumstances does not appear. The police signal system was later installed, and its wires were likewise attached to the plaintiff's poles. No charge has ever been made by the plaintiff for the use of its poles for these purposes. Whatever rights the city may have in the top gain of plaintiff's poles to attach its fire alarm and police signal wires, it is evident that the use thereof for its electric light and power wires would impose upon the plaintiff a greater and radically different burden. The latter wires carry a high potential and constant electric current. Besides, in distributing such current the city is the plaintiff's competitor. The plaintiff says that the ordinance at most was not intended to cover other wires than those then in use and similar ones, and contends that a construction should be given the ordinance, if possible, that will avoid its being held unconstitutional.

In construing the ordinance we look for the intention of the city council as expressed by the language employed, read in the light of the surrounding circumstances. It will be presumed that the council did not intend what it had no authority to do; and if, without doing violence to the fair meaning of its language, we can give the ordinance a construction that will save it from the constitutional objection, it will be our duty to do so. *In re Barre Water Co.*, 62 Vt. 27, 20 Atl. 109, 9 L. R. A. 195; *In re Howard's Estate*, 80 Vt. 489, 495, 68 Atl. 513. This result can be accomplished by holding that, so far as poles already in the streets were concerned, the ordinance did not contemplate a use for purposes so unlike that then enjoyed by the city as the use now claimed would be. This is as far as the case requires us to go. It is not now necessary to consider just what rights were intended to be included, nor how the ordinance would affect the subsequent acquiring of rights in the city streets. So far as this case is concerned the validity of the contract in the respects complained of is sustained, and the plaintiff is entitled, on the facts reported, to recover its claim.

The defendant argues certain exceptions which remain to be considered.

1. Defendant excepted to the referee's statement that he did not find that the ordinance contemplated the reservation of the top gain of poles for the commercial distribution of elec-

tricity by the city, on the ground that the interpretation of the ordinance is a question of law for the court.   Granting that it is a question of law, the defendant was not prejudiced by the statement: (a) Because the referee's conclusion was not binding upon the court; and (b) because, so far as applicable to this case, it accords with our interpretation of the ordinance.

2.   Defendant excepted to the finding of the sum due the plaintiff on the ground that the referee based his finding solely on the contract instead of on all the evidence in the case.   The exception is without merit.   The referee reports all the facts in evidence, and then finds and states the true account between the plaintiff and defendant, "provided the city be held bounden by the contract" in question.   The record does not bear out the claim that the finding is based upon the contract alone.   The referee in effect submits the validity of the contract on the facts reported; and properly so, as on the issue raised it was a question of law.

3.   Defendant argues an exception "to the admission of testimony showing what the income of the city plant was in 1915," excepted to on the ground of immateriality.   The referee reports that counsel agreed that the income from the operation of the city plant for the year 1915 was as stated in the report, and that one of the defendant's counsel objected "to the admission of this evidence" as immaterial.   The record shows no ruling of the referee that was excepted to, and the referee made no finding on the subject.   If parties can ever concede a fact into the record and at the same time reserve an available exception, such is not the situation here.   Besides, if immaterial, the conceded fact was harmless.

The remaining exceptions are controlled, or rendered immaterial, by the disposition of the case on the report.

*Judgment affirmed.*