CITY OF BURLINGTON *v.* BURLINGTON TRACTION CO.

Special Term at Burlington, December, 1923.

Present: WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed May 28, 1924.

*Mandamus—Issuance to Compel Performance of Public Duty under Franchise—Prerequisites to Issuance of Writ—Construction of Franchise Agreements—Duty of Street Railway to Maintain and Repair Track Area of Street—Such Duty Involves Keeping Pace with Growth and Progress of City—Style of Pavement Required—Right to Grant Privilege of Occupying Streets Primarily in Legislature—Duty to Keep Track Area in as Good Condition as Adjacent Street May Involve Paving—Implications from Franchise Agreement Will Not Be Made in Derogation of Public Rights—City May Not Change Terms of Franchise Agreement to Affect Vested Rights—Street Railway's Obligation to Pave Its Track Area Not Affected by Right of City to Pave Such Area—Franchise Agreement Must Be Construed as Whole*

*—Street Railway Not Relieved from Public Duty under Franchise Agreement by Doctrine of Practical Construction—Mandamus Will Lie to Compel Street Railway to Perform Franchise Obligations, Where Other Remedy Not Provided—Jurisdiction of Public Service Commission to Compel Performance of Franchise Agreement Generally— Public Service Commission without Jurisdiction Where Special Provisions of Law Applicable—Street Railway Company's Charter and Franchise Agreement Thereunder Special Provisions of Law—Questions of Right under Charter and Franchise Agreements Constitute Questions of Law outside Jurisdiction of Public Service Commission— Repeal of Statute by Necessary Implications from Subsequent Enactment—Franchise Agreement Not Affected by Subsequently Enacted Charter Provision—Franchise Agreement Held to Constitute Special Provision of Law under G. L. 5050—Proper Construction of Street in Track Area of Street Railway Determined from Franchise Agreement—Duty to Pave Track Area under Franchise Agreement—Judgment and Discretion Vested in Street Commissioners as to Repairs of Track Area May Not Be Delegated —Excessive Demand in Application for Mandamus Does Not Preclude Granting Proper Relief—City Contractor's Acts Do Not Affect Franchise Obligations—Invasion of Rights of Street Railway Company by Excavations and Removal of Material Are Matters of Purely Private Concern, Not Justifying Company's Refusal to Comply with Franchise Obligations—Power of City as to Type of Rails When Street Is Repaired.*

1. When there is a grant of a public franchise which imposes certain obligations on the grantee, and such grant is accepted, a public duty is thereby imposed differing from an ordinary contractual duty, and mandamus will issue to compel its performance in a proper case.

2. Prerequisites to the issuance of mandamus to compel the performance of a public duty imposed by a franchise are that the relator has a clear legal right to the performance of the particular duty by respondent, and that the law affords no other adequate remedy.

3. Street railway franchise agreements are in derogation of common rights, and must be construed liberally in favor of the public and strictly against the beneficiary of the grant.

4. A street railway company, granted the right to use such portion of a street as is needed for its tracks, in taking charge of it thereby has the duty imposed upon it, formerly resting upon the municipality as agent of the State, to maintain and repair the track area, unless in the grant or municipal consent thereto, such responsibility expressly continued upon the municipality.

5. The obligation resting upon a street railway company to keep its portion of the streets in good repair involves the duty to keep pace with the growth and progress of the city, and to conform its work to the policy of the municipality in the matter of street improvements.

6. Provision of street railway franchise agreement, requiring company to keep its track area in repair with the same material used in that portion of the street, means, not only that material of same kind shall be used, but that a pavement of the same style shall be constructed.

7. Right to grant privilege of occupying streets and to fix terms is primarily in the Legislature.

8. Where the Legislature, by the charter of a street railway company, delegated to a city council power to agree with the directors of the company as to terms, and by agreements entered into thereunder the company was required to keep the portion of the street comprising its track area in as good condition and at the same grade as the adjacent street, it was the duty of the company to pave such track area, if necessary to comply with such agreements, although they did not in terms require paving of the street.

9. In a franchise agreement, all implications necessarily arising from the language used and indispensible to effectuate the clear intention of the agreement are as much a part of it as if expressed; but no implication will be indulged in derogation of public rights.

10. Where the Legislature in granting the charter of a street railway company delegated to a city council power to agree with the directors of the company as to terms, and an agreement was entered into thereunder, the city council could not there-

after change the law or the terms so accepted, nor revoke nor infringe the rights so vested.

11. The obligations and duties of a street railway company under its franchise agreement to build, maintain, and keep in repair its track area are not affected by a provision in such agreement relating to the right of the city to pave the track area.

12. A franchise agreement must be construed as a whole and effect given to every part.

13. Where the duty or obligation accepted by a street railway company in its franchise agreement in return for the privilege of using the streets is a condition of the grant, it becomes a public duty and not a mere private contract, and the doctrine of practical construction of contract by the parties has no application.

14. Duties of a street railway company under its charter and franchise agreement, with respect to building, maintaining, and repairing the portions of the street included in its track area, defined, and *held* to be such that their performance could be compelled by mandamus, if the law afforded no other adequate remedy.

15. Under G. L. 5050, primary jurisdiction of the question of a street railway company's duty to build, maintain, and repair that portion of the street constituting its track area is in the Public Service Commission, unless governed by some special provision of law, or without the scope of that section; and in cases in which it has jurisdiction application to compel performance by the company should be made to the Commission.

16. Where a street railway company, pursuant to the terms of its charter, entered into a franchise agreement with a city, imposing certain duties upon the company with respect to building, maintaining, and repairing that portion. of the street within its track area, the charter and contract entered into thereunder relate to a public duty and amount to a "special provision of law" within the proviso of G. L. 5050, leaving the Public Service Commission without jurisdiction respecting questions arising thereunder.

17. Whether city had the right to compel a street railway company to build, maintain, and repair that portion of the street included within its track area, under the company's charter and a franchise agreement made pursuant thereto, consti-

tuted a pure question of law, and was not within the administrative competency of the Public Service Commission.

18. The provision of the charter of the city of Burlington, giving the city council the right to fix, demand, impose, and enforce just and reasonable terms, conditions, and regulations respecting the use and occupancy of the streets of the city by the Burlington Traction Company, having been re-enacted after the adoption of what is now G. L. 5050, amounted to a repeal of that section of the statutes as to all matters therein in conflict with the latter enactment, so far as the city of Burlington is concerned.

19. The terms of a street railway company's franchise agreement with a city are not affected by a subsequently enacted charter provision, as the contract can only be cancelled or modified by agreement of the parties.

20. A franchise agreement, between a street railway company and a city, pursuant to the provisions of the company's charter, as to the obligations of the company to build, maintain, and repair the portion of the street included within its track area, is a "special provision of law" within the meaning of the proviso of G. L. 5050, to the effect that the general jurisdiction conferred by such section upon the Public Service Commission should not apply to special provisions of law relating to anything contained in such contract.

21. Street railway company's franchise agreement *held* to determine what constituted proper construction of the street, required to be made by the company within its track area.

22. Where the franchise agreement of a street railway company made the city's street commissioners the authority to supervise, direct, and approve the permanent repairs on the track area, the broad authority thus given the commissioners being a material element of the contract, the company must pave or repair the track area if this is required to meet its agreement, pursuant to such authority, notwithstanding the provisions of a resolution by the city council specifying how the track area shall be constructed.

23. The authority thus delegated to the street commissioners calls for the exercise of judgment and discretion, and cannot be transferred to, or exercised by, any other board or officer without such company's consent, hence the city may not demand compliance with specifications for foundation of track

area calling for more than is required to put that area into same condition as the street outside of it, when the street commissioners have not announced their requirements.

24. In an application for mandamus, an excessive demand does not preclude the granting of such relief as the relator shows himself entitled to, if within his prayer, particularly in view of the fact that in this jurisdiction the petition takes the place of the alternative writ, and the statute authorizes the issuance of such writ of mandamus as may be necessary to the furtherance of justice.

25. The obligations of a street railway company under its franchise agreement to remedy defects in the portion of the street within its track area, which was out of repair and did not conform to the wrought grade of the adjacent street before a contractor for the city made certain excavations and removed certain materials from the track area, was unaffected by such acts of the contractor.

26. That city may have invaded the rights of a street railway company by excavations and removal of material from the track area is a matter of purely private concern, and neither excuses the company from discharging its public duty under its franchise agreement with respect to keeping the track area in repair, nor justifies it in allowing the track area to become an obstruction to the right of the public to the safe and convenient use of the streets.

27. Under franchise agreement of a street railway company with a city, providing that whenever the city should pave a certain street the company should lay such rails as the city council should direct, and as shall be suitable to the paving to be used, after the company had laid grooved rails under the direction of the city council when the street was first paved, the city council did not have authority to direct the substitution of a different type of rail when the street was being repaved, if the kind of rail originally laid was suitable to the new paving, although the agreement contemplated not only the original paving, but such subsequent repaving as the needs of the city should require.

PETITION for writ of mandamus, preferred to the Supreme Court for Chittenden County, at its October Term, 1923, and

heard on petition, answer, and depositions at a Special Term at Burlington in December, 1923. *Writ granted.*

*Hamilton S. Peck* and *Warren R. Austin* for the petitioner.

Public grants are to be construed liberally in favor of the public and strictly against the grantee. *Knoxville Water Co.* v. *Knoxville,* 200 U. S. 22, 50 L. ed. 353, 26 Sup. Ct. 224; *Blair* v. *Chicago,* 201 U. S. 400, 50 L. ed. 801, 26 Sup. Ct. 427; 4 McQuillan Mun. Corp. § 1652, at p. 3470; Nellis on Street Railways, § 46, pp. 123, 124; *Madison* v. *Southern Wis. R. R. Co.,* 156 Wis. 352, 146 N. W. 492, 10 A. L. R. 910; *Chambersburg Borough* v. *Chambersburg & G. Elec Ry. Co.,* 101 Atl. 922; *Joy* v. *City of St. Louis,* 138 U. S. 1, 34 L. ed. 855; *Southern Wis. R. R. Co.* v. *City of Madison,* 240 U. S. 459, 60 L. ed. 739; *City of Barre* v. *Barre & M. Tr. & Pr. Co.,* 88 Vt. 304, 92 Atl. 237; *City of Danville* v. *Danville Ry. & Elec. Lt. Co.* (Va.), 76 S. E. 913, 43 L. R. A. (N. S.) 463; 12 R. C. L. 194, 195.

The duty of the street railway to make repairs of its track area was a continuing one, and must conform to changes and improvements in the streets required by progress and growth of the city. Elliott on Railroads, 3rd ed. § 1467; *Madison* v. *Southern Wis. R. R. Co., supra; Chambersburg Borough* v. *Chambersburg & G. Elec. Ry. Co., supra; City of New York* v. *New York City Ry. Co.,* 116 N. Y. S. 939.

The duty of the street railway to keep in permanent repair the portion of the street within its track area required it to pave the area to correspond with the improved pavement laid by the city elsewhere in the street. *St. Helena* v. *San Francisco N. & C. R. Co.,* 24 Cal. App. 71; *State ex rel. Jacksonville* v. *Jacksonville St. R. R. Co.,* 29 Fla. 590; *Anna* v. *Northern,* 261 Ill. 538; *State ex rel. Vincennes* v. *Vincennes Traction Co.,* 181 Ind. 291; *City of New York* v. *New York City Ry. Co., supra; Chambersburg Borough* v. *Chambersburg & G. Elec. Ry. Co., supra; Town of West Rutland* v. *Rutland Ry. L. & Pr. Co.,* 96 Vt. 413, 121 Atl. 755; *People ex rel. Benger* v. *Davis,* 100 Misc. 334, 165 N. Y. S. 47, affirmed 178 App. Div. 944; *Danville* v. *Danville Ry. & Elec. Co.,* 43 L. R. A. (N. S.) 463; Elliott on Railroads, § 1487.

Mandamus will lie to compel a street railway to perform its duty to repair and guard the public against injury. *Town*

*of West Rutland* v. *Rutland Ry. L. & Pr. Co., supra; McCran*
v. *Public Service Ry. Co.* (N. J.), 122 Atl. 205; 12 R. C. L.
206; 18 R. C. L. 148; Elliott on Roads & Streets, § 986; *State*
v. *St. Paul & R. Co.,* 35 Minn. 131; *Halifax* v. *R. R. Co.,* 1 Russ.
Equity (Nova Scotia) 319; *State ex rel. Jacksonville* v. *Jack-
sonville Street Ry. Co., supra; Milwaukee Elec. Ry. & Lt. Co.*
v. *Wisconsin ex rel. City of Milwaukee,* 64 L. ed. 476; *Shreve-
port* v. *Nelson,* 118 La. 732, 43 So. 389; *Wabash R. R. Co.* v.
*R. R. Com. of Ind.* (Ind.), 95 N. E. 673; *State* v. *Ogden Rapid
Transit Co.* (Wash.), 112 Pac. 120; *State* v. *Milwaukee Elec.
Ry. & Lt. Co.* (Wis.), 29 N. W. 623; *People* v. *Northern Cont.
Ry. Co.* (N. Y.), 58 N. E. 138; *Farmers Loan & Trust Co.* v.
*Ansonia,* 61 Conn. 76, 23 Atl. 705; *Lansing* v. *City Elec. Ry.
Co.* (Mich.), 66 N. W. 949; *Camden* v. *Public Service Ry. Co.*
(N. J.), 82 Atl. 607; *People* v. *Suburban R. R. Co.,* 178 Ill. 594,
49 L. R. A. 650; *Grosse Pointe* v. *Detroit & L. St. R. R. Co.,*
130 Mich. 363, 90 N. W. 42; *Mayor of Borough of Rutherford*
v. *Hudson River Traction Co.,* 73 N. J. Law, 63 Atl. 84; *People*
v. *Western Cold Storage Co.,* 287 Ill. 612, 123 N. E. 43, 11 A.
L. R. 437; *People ex rel. Jackson* v. *Suburban R. R. Co., supra;*
4 McQuillan Municipal Corp., § 1766, p. 3773; Nellis on Street
Railways, § 163, p. 366.

*Vernon A. Bullard, Matthew G. Leary,* and *John G. Sar-
gent* for the petitionee.

The Public Service Commission has jurisdiction of the mat-
ter sought to be enforced by mandamus. *Town of West Rut-
land* v. *Rutland Ry. L. & P. Co.,* 96 Vt. 413, 121 Atl. 755; *Clay
County Tel. Assn.* v. *S. W. Bell Tel. Co.,* 107 Kan. 169, 11 A.
L. R. 1193; 25 R. C. L. § 54, notes 19 and 20.

Obligations arising upon contract will not be enforced by
mandamus, where there is no question of trust or official duty,
but writ can only be used to compel discharge of duties imposed
by law. *State of Wisconsin ex rel.* v. *John F. Icke,* 136 Wis.
583; *Booker et al.* v. *Med. Col.,* 156 Mich. 95; *City of Chicago*
v. *Tel. Co.,* 230 Ill. 157; *State of Louisiana ex rel. Badger* v.
*New Orleans,* 49 La. App. 804; *State of Wis. ex rel. Bing* v.
*Milwaukee Medical College,* 106 N. W. 116; *State* v. *Republican
River Bridge Co.,* 20 Kan. 404; *State ex rel. Cleveland* v. *Cleve-
land El. R. Co.,* 15 Ohio C. C. 200; *Kingston* v. *Kingston P. &*

*Co. El. R. Co.*, 25 Okla. 402; *Bailey* v. *Oviatt*, 46 Vt. 627; *Farr* v. *Town of St. Johnsbury*, 73 Vt. 42.

The contract between the city council and street railway company cannot be modified by either party without consent of the other. Acts of 1872, No. 226; *State of Missouri* v. *Kansas City*, 38 L. R. A. 218; *Coast Line Yr. Co.* v. *Savannah*, 30 Fed. 646; *Rutland Co.* v. *Marble City Co.*, 65 Vt. 377.

The form of construction in the track area prayed for in the petition should not be ordered because it is not durable and is dangerous to travel. *Osgood* v. *Lynn & B. R. Co.*, 130 Mass. 492; *Houston St. Ry. Co.* v. *Delesdernier*, 84 Tex. 82, 19 S. W. 366; *Laredo Elec. R. Co.* v. *Hamilton*, 23 Tex. Civ. App. 48, 56 S. W. 998; *Cleveland* v. *Bangor St. R. R. Co.*, 86 Me. 232, 29 Atl. 1005; *Joyce* v. *Halifax St. Ry. Co.*, 24 N. S. 113; *Brown* v. *Metropolitan St. Ry. Co.*, 60 App. Div. 184, 70 N. Y. S. 40, 171 N. Y. 699, 64 N. E. 1119; *McKillop* v. *Duluth St. R. R. Co.*, 56 Minn. 532, 55 N. W. 729.

BUTLER, J. This is a petition for mandamus, in which the relator seeks to compel the respondent to perform certain alleged public duties specified in certain agreements with the city, in respect to the use and occupation of the streets by its railroad. The respondent was organized under its charter, No. 226, Acts of 1872, under the name and style of the Winooski and Burlington Horse Railroad Company. By No. 222, Acts of 1896, the name of the company was changed to the Burlington Traction Company. By the former act, it was authorized to lay and use the tracks of its railroad, operate with horse power through the streets of the city of Burlington, through the village of Winooski, town of South Burlington, and other places, upon such terms as the city council of the city of Burlington, the trustees of the village of Winooski, and the selectmen of South Burlington within their respective limits, might agree with the directors of the company, with the further provision, in case they could not agree, either party might petition the county court of Chittenden county to appoint commissioners to fix the terms.

Under the authority so granted, an agreement was entered into in the form of a resolution adopted by the city council, September 21, 1885, and accepted by the company. Among other things it was agreed that the company "shall be required

to maintain its own travel, that is, shall build their own roadway" in the track area, and "keep it in as good condition at least, as the streets are kept at all points," and should in general maintain its roadbed at the same grade as the adjacent streets should be, from time to time, established by the city council.

That it should not allow its rails to rise more than one-half inch above the roadbed or track along side of it so that vehicles could readily pass from side to side, and that when defects in the roadbed should be discovered, it should at once put it in order speedily, and failing to do so the street committee or superintendent should do the same at the expense of the company. By "track area" is meant that portion of the road between the rails and a space of two feet outside the rails of the track.

Under this agreement, the Horse Railroad Company constructed its tracks on various streets, including Church Street between Main and Pearl Streets (except a portion not material here), and in that portion of Pearl Street from its intersection with Church Street to its intersection with the easterly limit of North and South Winooski Avenue, and has occupied and used said streets from thence, hitherto.

In 1886 the respondent was granted authority by the Legislature to operate branch lines in the city, and in 1888 was granted the right to use other power, excepting steam, and thereupon the company applied to the city council to make the changes contemplated. On June 3, 1893, a new agreement was entered into in the form of a resolution adopted by the city council and accepted by the company, which, besides providing for the location of poles and wires and the location and gauge of tracks, the change of motive power to electricity, and restoring the streets and walks wherever disturbed by the company in its construction or repairs of its railroad, contained the following provisions, material here, of which we state the substance:

The provisions of the resolution of 1885 were confirmed and made a part of the new agreement except so far as they were "repugnant to this agreement or its provisions."

The company was required to grade the surface of its roadbed flush with the top of the rails on the outside of the track and not more than one inch below the top of the rail on

the inside of the track "with the same material as is used on that portion of the street in which the track is laid"; to maintain its track flush with the established grade of the streets or with the surface of the street; and under the direction, supervision, and approval of the street commissioners at all times "to keep in permanent repair" the track area so long as it occupies the street for railroad purposes; in default of which, the board of street commissioners, after notice, "shall make such repairs at the expense of the railroad company and said company shall pay such reasonable bills for such work" as should be presented to it. It is further provided that the company should repair and keep in order any pavement which the city might lay "in the track area and relay pavement whenever the company shall remove or disturb it."

The company is given permission to use T-rails, but is required when the city should pave Church Street, to lay such rails therein "as the City Council shall direct and as shall be suitable to the paving to be used." These two agreements, will, for convenience, be termed the "franchise agreement."

On June 27, 1921, the city council, by direction of the electorate, began a plan for permanent improvements on Church and Pearl Streets because of the worn-out condition of portions of the streets and the increase of travel thereon. A resolution was adopted by the city council on September 11, 1923, a certified copy of which was given to the railroad company, calling attention to the agreements of 1885 and 1893, and giving notice to the company that it "is hereby required and ordered to maintain its own travel, that is, to build its own roadway inside the tracks on both said Pearl and Church Streets and put it into as good condition as the remainder of said streets, and to make and maintain the streets for two feet outside the rails on both sides of its road like that inside the track and to grade the surface of the roadbed flush with the top of the rails on the outside of the tracks and not more than one inch below the top of the rails on the inside of the tracks with the same material as is used on that portion of the streets in which said tracks are laid, and to establish and maintain said tracks flush with the established grade and with the surface of said streets, so that vehicles can readily pass from side to side and across the same." The resolution also required the company to put and keep "in permanent repair" that portion of said streets called

the trolley area; and lay such rails on said streets as are specified in "Exhibit A," and as should be suitable to the pavement used, and "that the Burlington Traction Company shall construct the necessary foundation or support for the ties and rails and other apparatus of its railroad on said streets of such material, of such proportions, in such manner and according to such plan and workmanship as is specified in Exhibit A, all of which are adjudged by the City Council to be necessary to conform said foundation and said railroad to the construction and condition of the streets as they have been and are now being improved."

It is admitted that all of the traffic passing over every line of the respondent's railroad, including the line to Winooski, the line to Queen City Park, the line to the Lake, the line to the depot, and perhaps others, converges upon and passes over in both directions the single track on Church Street, and is very great, with an average of five or more cars every ten minutes. But it is denied that the safety and convenience of the public incident to the increased traffic or the worn out condition of the streets required the laying of reinforced cement concrete pavement on Church Street or the resetting of the brick on Pearl Street, and that the substituting of new and heavier rails and ties to support and keep in place the pavement outside the rails, as alleged by the petition, is reasonably necessary or properly required. And the respondent contends that such requirement is unnecessary and unreasonable because the city by common understanding with the company in 1898, and again in 1904, repaved Church Street, and at the same time, at the request of the city, the respondent relaid on Church and Pearl Streets suitable nine-inch grooved rails to the acceptance and entire satisfaction of the city and which are now in good condition suitable and proper for the safety and convenience of the public and will remain so for many years; that the rails demanded are wholly unsuitable for the pavement used and dangerous to the public.

[1, 2] As claimed by the relator, it has long been settled that when there is a grant of a public franchise which imposes certain obligations on the grantee, and such grant is accepted, a public duty is thereby imposed upon it differing from an ordinary contractual duty, and that mandamus will issue to compel its performance in a proper case. 12 R. C. L. 266; 26

Cyc. 375. But two prerequisites must exist. First, it must appear that the relator has a clear legal right to the performance of the particular duty at the hands of the respondent; second, that the law affords no other adequate remedy. *Bates* v. *Keith*, 66 Vt. 163, 28 Atl. 865; *West Rutland* v. *Rutland Ry. L. & P. Co.*, 96 Vt. 413, 121 Atl. 755; See *Sanborn* v. *Weir*, 95 Vt. 1, 112 Atl. 228.

1. The respondent says that the relator has a complete remedy through the Public Service Commission which has jurisdiction in the first instance.

2. The respondent denies that it is bound by contract or common law to pave the whole of its track area with the same material as the adjacent streets or to pave it at all. These two propositions will be taken up in the inverse order.

[3] The rights of the parties depend upon the construction of the franchise agreement. Such agreements, like legislative grants to street railroads of rights in the streets of municipalities, are in derogation of common rights, and the exercise of the rights so granted is considered to be an encroachment on the right to the exclusive use by the public and must be construed liberally in favor of the public and strictly against the beneficiary of the grant. Such is practically the universal holding of the courts. See note to *Madison* v. *Southern Wis. Ry. Co.*, 156 Wis. 352, 146 N. W. 492, 10 A. L. R. at p. 928.

[4] It is generally held that when the state gives up a portion of its highways to a particular use, without providing that what has been the duty of the municipality as to them shall continue, such duty devolves upon the party acquiring the right to use them, and a street railway given the right to use such portion of a street as is needed for its tracks, in taking charge of it, is charged with the duty of properly maintaining it. It is because the municipality, as agent of the state, has charge of the streets, that it must maintain them and keep them in proper repair, and when the state permits this charge as to a portion of the street to be committed to another, it must be understood as imposing upon such party the responsibility that formerly rested upon the municipality, unless in the grant, or in municipal consent thereto, such responsibility is expressly withheld and its imposition continued upon the municipality. 25 R. C. L. 1171.

So a legislative grant to a company to use the street carries with it, apart from any agreement, the duty to maintain and keep in repair the track area. But here the respondent's duty in this respect is coextensive with the franchise agreement, in which its duty is expressly stated.

[5] It is an accepted doctrine that the obligation resting upon a street railway company to "keep its portion of the streets in good repair," or language of like import, necessarily involves the duty to keep pace with the growth and progress of the city and to conform its work to the policy of the municipality in the matter of street improvements. 25 R. C. L. 1173.

[6-8] The provision of the franchise agreement that the company shall keep in repair "with the same material as is used in that portion of the street" means, not only that material of the same kind shall be used, but, also, that a pavement of the same style shall be constructed. *State* v. *Milwaukee El. Ry. & L. Co.,* 157 Wis. 121, 147 N. W. 232. The right to grant the privilege of occupying the streets and to fix terms, is primarily in the Legislature. *Barnet* v. *Passumpsic Turnpike Co.,* 15 Vt. 757. It delegated that power by the respondent's charter to the city council to agree with the directors of the company as to terms. Under that authority the railroad was constructed.

By section 8 of the agreement of 1893, the kind of material to be used and changes to be made, if any, as to the surface of the roadbed and track, are provided for. The agreement of 1885 was to remain in full force, except only when repugnant to the later agreement. Neither of these agreements, in terms, require paving of the street but they do require them to be kept in as good condition at all points and at the same grade as the adjacent street.

The grade and construction of the streets are to be determined by the city, and the company must conform to them. If, in order to put and keep the track area in as good condition as the adjacent streets as required by the agreement, it becomes necessary to pave it, such would be the duty of the respondent. *Mayor, etc. of City of New York* v. *Harlem Bridge, etc.,* 186 N. Y. 304, 78 N. E. 1072; *Madison* v. *Southern Wis. Ry. Co.,* 156 Wis. 352, 146 N. W. 492, 10 A. L. R. 919 and note; *Conway* v. *Rochester,* 157 N. Y. 33, 51 N. E. 395; *Columbus St. Ry. & Lt. Co.* v. *City of Columbus,* 43 Ind. App. 265, 86 N. E. 83.

[9]    All implications which necessarily arise from the language used and indispensable to effectuate the clear intention are as much a part of the agreement as if expressed in language, but no implication will be indulged in derogation of the right of the public. Nellis on St. and Rds., 123, 124; See *Caverly & Gould Co.* v. *Village of Springfield,* 83 Vt. 396, 76 Atl. 39.

[10]    The city council could not, subsequently, change the law or the terms accepted, or revoke or infringe the rights so vested. *Rutland Electric Light Co.* v. *Marble City Electric Light Co.,* 65 Vt. 377-389, 26 Atl. 635, 20 L. R. A. 821, 36 A. S. R. 868; *City of Barre* v. *Perry & Scribner,* 82 Vt. 301, 73 Atl. 574; *Burlington L. & P. Co.* v. *City of Burlington,* 93 Vt. 27, 106 Atl. 513; *State of Missouri ex rel. Kansas City* v. *East Fifth Street Ry. Co. et al.,* 140 Mo. 539, 41 S. W. 955, 38 L. R. A. 218, 62 A. S. R. 742; *Interurban Ry. & T. Co.* v. *Public Utilities Commission,* 98 Ohio St. 287, 120 N. E. 831, 3 A. L. R. 696; *Milwaukee Electric Ry. & Lt. Co.* v. *State of Wisconsin,* 252 U. S. 100, 64 L. ed. 476, 40 Sup. Ct. 306, 10 A. L. R. 892.

The reason given for the respondent's position on the second ground stated, is that, while the terms, conditions, and regulations of the franchise agreement in some parts indicate that the respondent must construct the track area to conform to the adjacent highway, other parts clearly indicate that the paving of the track area is to be done by the city, and it is claimed that it has been so understood and treated by the parties; that the agreement is ambiguous and, being questioned, must be determined by practical construction; that since the acceptance of the later agreement, both the respondent and the relator have understood and construed said agreement to mean that whenever Church Street was repaved by the city, the only obligation the traction company was bound to recognize was to comply with the city's request as to the type of rail, if such rail was suitable to the paving used, and that the rights of the city are limited by such construction.

It is argued that the provisions that "the company shall repair and keep in order the pavement which the City may lay when the company shall at any time disturb it," that "whenever the City shall pave Church Street, the Company shall lay such rails as the City Council shall direct and as are suitable to the paving," that "the Company shall restore the surface

of the streets, sidewalks, and roadbed when the Company shall disturb or excavate them,'' all point to the one idea that paving of the trolley area is to be done by the city, and restored by the company only when it shall be at fault.

But the purpose of these provisions, when considered together, seem to have been misconstrued. Section 9 relates solely to permanent repairs when made under the supervision of the street commissioners. The second clause thereof is independent and relates to the right of said commissioners to make such repairs and collect of the company the reasonable expense thereof upon presenting its bill for the work.

[11, 12] The agreement makes it the duty of the company to keep in order such pavement so laid by the city in the trolley area, and gives to the city the option to make permanent repairs at the company's expense, even to the extent of paving the trolley area if the company fails, upon proper notice, to make them. The building and repairing of the track area and the duty of the respondent in respect to maintenance and the making of permanent repairs are taken care of by other provisions of the franchise agreement relating to the duties of the company. The obligations and duties of the respondent in respect thereto are in no way affected by the provisions of the contract relating to the right of the city to pave the track area. The franchise agreement must be construed as a whole and effect given to every part. See *Ryegate* v. *Wardsboro,* 30 Vt. 746.

[13] Respecting the respondent's claim that the parties have given the agreement a practical construction favorable to its present contention, it should be observed that the duties and obligations of the respondent, arising out of the contract, are public in character. Where the duty or obligation which a street railroad company accepts in return for the privilege of using the streets is a condition of the grant, it becomes a public duty and not a mere private contract. *People ex rel. Jackson* v. *Suburban Railroad Co.,* 178 Ill. 594, 53 N. E. 349, 49 L. R. A. 650. The obligations assumed are of such a character as to raise a public duty.

This is clearly pointed out in *Mayor, etc. of Borough of Rutherford* v. *Hudson River Traction Co.,* 73 N. J. Law, 227, 63 Atl. 84. In speaking of the character of the duty imposed on the company by accepting the franchise, Mr. Justice Pitney

says: "But again, it is, in our opinion, erroneous to treat such a municipal consent, and the acceptance thereof by the street railway company, as imposing obligations of no other, or higher character than those that result from the ordinary contract *inter partes*. The participants in this transaction are a branch of the lawmaking power of the state, on the one hand, and a corporation organized for public purposes, on the other. The subject of the treaty is a matter of purely public concern. * * * *

"In short, the statute, as we take it, plainly imports that the common council or other governing body of the municipality is to perform a legislative function in granting a special user of the public highway to a traction company, and in setting bounds and limits to its user and imposing conditions thereon; while, on the other hand, the traction company likewise is dealt with as a public agency, and not a mere private entity. In its application to the council it not only seeks an opportunity for private profit, but it tenders itself a volunteer to the public service, offering to embark the capital of its stockholders in a public improvement and to assume correlative duties."

It is said in *Duluth* v. *Duluth United St. Ry. Co.*, 137 Minn. 286, 163 N. W. 659, 10 A. L. R. 909, that "it is doubtful whether the city authorities may, by a practical construction, fritter away the rights of the public," for the state is a party in interest.

The reasoning of the court in *Fullerton* v. *Des Moines* (Iowa), 115 N. W. 607, as to practical construction of contracts, may well be applied here: "To admit the soundness of this proposition would be to open the door to unlimited abuse of power intrusted to municipal officers. * * * It would be a most unwholesome rule, which would require us to say that the wrong thus attempted or accomplished will be condoned by the courts simply because the parties thereto have agreed to treat their method of dealing as a performance of the contract."

To the same effect is *National Water Works Co.* v. *School District*, 48 Fed. 523, wherein it is said: "It may be said that the construction given to a doubtful provision by the parties to a contract, and affecting their interests only, often influences courts in their judgment, upon the reasonable presumption that the parties to the judgment (contract) are in a condition to best know what was meant or intended by it, and, moreover,

likely to guard their interest. The force of such reasoning is broken when we come to apply it to municipal corporations. They must of necessity have their affairs conducted by persons selected according to law, who often have but a general public interest in the matters intrusted to them, are frequently changed, and not always the best calculated to construe contracts made by their predecessors.'' See *Old Colony Trust Co.* v. *Omaha,* 230 U. S. 100, 57 L. ed. 1410, 33 Sup. Ct. 967; *Messenger* v. *Pennsylvania R. R. Co.,* 36 N. J. Law, 407, 13 A. R. 457.

Where a municipality is exercising a legislative function we hold that the doctrine of practical construction does not apply.

[14] We conclude, therefore, that the company must build and maintain its own roadway, and, as a necessary incident thereto, a proper foundation therefor; furnish the necessary material; keep its track area in as good condition as the adjacent highway is kept by the city; grade the surface of the roadbed with the same kind of material as is used on that portion of the street in which its tracks are laid flush with the present established grade and surface of the streets; pave the track area so as to correspond with, and conform to, the adjacent streets, and so that the surface of the streets are flush with the top of the rails on the outside and not more than one inch below the top of the rails on the inside of the tracks.

So far, the obligation resting upon the respondent is a clear legal duty, thus answering the first requirement entitling the relator to relief in this proceeding.

[15] It remains to consider whether mandamus should be denied because of the jurisdiction respecting such matters conferred upon the Public Service Commission by G. L. 5050. By that section the Public Service Commission is given jurisdiction of all matters provided for in the charter of any railroad corporation. It is insisted that the primary jurisdiction of the matter here involved is in that Commission, and that this question is controlled by our decision in *West Rutland* v. *Rutland Ry. Lt. & P. Co.,* 96 Vt. 413, 121 Atl. 755, and so it is, unless governed by some special provision of law or is without the scope of that section. See *Colonial Lt. & P. Co.* v. *Creasor,* 87 Vt. 457, 89 Atl. 472; *Sayers* v. *Montpelier & Wells River R. R. Co.,* 90 Vt. 201, 97 Atl. 660, Ann. Cas. 1918B, 1050;

*Procter & Gamble* v. *U. S.*, 225 U. S. 282, 56 L. ed. 1091, 32 Sup. Ct. 761; *Sabre* v. *Rutland Ry. Co.*, 86 Vt. 347, 85 Atl. 693, Ann. Cas. 1915C, 1269.

That application should have been made to the Commission if the relief sought is within its primary jurisdiction, may be admitted. But such is not the fact.

[16, 17]    It was held in *Barre* v. *Barre & Montpelier Traction Co.*, 88 Vt. 304, 92 Atl. 237, that where the rights and liabilities of the parties depend on a contract entered into under authority granted by the charter of the traction company, it, together with the terms and conditions accepted under the so-called "franchise," amounts to a "special provision of law" within the proviso of G. L. 5050, and so is unaffected by it as far as it relates to anything therein contained.

This proviso refers only to special provisions of law relating to the jurisdiction of the board. *Central Vt. Ry. Co.* v. *State*, 82 Vt. 145, 151, 72 Atl. 324. That the respondent's charter and contract entered into thereunder relate to a public duty and amount to a "special provision of law" is apparent on the authority of the Barre case. In addition to this, it is apparent that the principal question here is without the jurisdiction of the Public Service Commission because it is a pure question of law and such questions are not within the administrative competency of the Public Service Commission.

[18-20]    When they arise in matters ordinarily within the jurisdiction of the Commission, power to grant the relief sought is in the Court where, alone, naked questions of law are properly cognizable. Nor is this all. By the provisions of the relator's charter quoted above, the city council is given the right to fix, demand, impose, and enforce just and reasonable terms, conditions, and regulations respecting the use and occupancy of the streets of the city, by the traction company. This provision of the charter, which was re-enacted after the adoption of what is now G. L. 5050, amounts to a repeal of that section of the statutes so far as the city of Burlington is concerned as to all matters in conflict with its terms. See *Burlington* v. *Burlington Traction Co.*, 70 Vt. 491, 41 Atl. 514; *In re Estate of Henry Wooley*, 96 Vt. 60, 117 Atl. 370. Not that the terms of the agreement are at all affected by this provision of the charter, for the contract could only be cancelled or modified by the agreement of the parties. Moreover, it is a "special provision

of law'' within the meaning of the proviso above referred to.

It necessarily follows that G. L. 5050 does not stand in the way of our taking jurisdiction of this case.

[21]   It is contended that the cement construction required by the city in the track area, as prayed for, will not be ordered because it is not durable, is dangerous to travel, and otherwise unsuitable, and that what is proper construction is a question of fact depending upon conditions and circumstances. But these questions are determined by the franchise agreement.

[22]   The respondent contends that by the terms of the agreement such permanent repairs of the track area as it is required to make are to be done under the direction and supervision of the board of street commissioners.   The relator argues that, as the commissioners are appointed by the city council and are subject in all respects to ''any limitations or restrictions'' contained in the orders of the council, they are but its agents to carry out the provisions of the resolution specifying. how the track area should be constructed.   We are unable to agree with the relator's claim.

As we have seen, the provisions of section 9 of the agreement of 1893 make the street commissioners the authority that should supervise, direct, and approve the permanent repairs on the track area.   This is a material element of the contract and must be carried out by the parties.   Having by solemn engagement delegated to these commissioners such broad authority, the company must pave or repave the track area if this is required to meet its agreement.

[23]   But the authority thus delegated to the commissioners calls for the exercise of judgment and discretion, and it cannot be transferred to, or exercised by, any other board or officer without the company's consent.   This being so, the city is not in a position to demand a compliance with the specifications for the foundation of the track area, since it calls for more than is required to put that area into the same condition as is the street outside of it, for the street commissioners have not announced their requirements.

So we cannot now order the company to construct the track area according to the specifications contained in the second paragraph of the prayer of the city's petition, with which the street commissioners had nothing to do, and the question arises, can we issue a mandate for a part of the relief prayed for?

[24]  It must be admitted that it is held in many juris-
dictions, in harmony with what appears to have been the com-
mon law rule, that the peremptory writ must conform strictly
to the alternative writ, and that the refusal to accede to an
excessive demand would not afford a basis for an application
for a mandate.  In some jurisdictions, the harshness of an appli-
cation of this rule is somewhat modified by the allowance of
amendments to the alternative writ to meet the case made by
the relator, and requiring conformity between the peremptory
and amended alternative writs.  But many modern cases hold
(with better reason, we think), that strict conformity is not
necessary, and that an excessive demand does not preclude the
granting of such relief as the relator shows himself entitled to,
if within his prayer.  Among these are, *State* v. *Jessup, etc.,
Paper Co.,* 1 Boyce (Del.) 379, 77 Atl. 16, 30 L. R. A. (N. S.)
290; *State* v. *Seattle Lighting Co.,* 60 Wash. 81, 110 Pac. 799,
30 L. R. A. (N. S.) 492; *State* v. *Criles,* 48 Ohio St. 142, 26
N. E. 1052; *State* v. *Williams,* 45 Or. 314, 77 Pac. 965, 67 L. R.
A. 166; *State* v. *Marron,* 18 N. M. 426, 137 Pac. 845, 50 L. R. A.
(N. S.) 274; *Commissioners* v. *Jackson,* 165 Ill. 17, 45 N. E.
1000; *Salterwhite* v. *State,* 142 Ind. 1, 40 N. E. 654, 1087;
*State* v. *Chicago County,* 115 Minn. 6, 131 N. W. 792, Ann. Cas.
1912D, 669, and note; *Larkin* v. *Superior Court,* 171 Cal. 719,
154 Pac. 841, Ann. Cas. 1917D, 670.

This rule is especially appropriate in a jurisdiction like
ours, where the petition takes the place of the alternative writ,
and we are authorized to issue such writ of mandamus as "may
be necessary to the furtherance of justice." G. L. 1578.

But it is contended that on the first day of March, 1923,
the company made a contract with the city as to these two
streets by which the company was to remove the rails then
being used, and on notice, lay seven inch T-rails of the
weight of approximately ninety-one pounds per yard if
the city so desired, provided the city would pave the
whole width of Church and Pearl Streets occupied by
the tracks, including the track area, and make cer-
tain other improvements; that having received notice from the
city, the company procured new ties and rails and was, and
is, ready to lay them as soon as the city has the track area ready
to receive them; that acting under the agreement, the city
entered into a written contract with one Ricci for the construc-

tion of a re-enforced cement pavement on the entire surface of Church Street from Main to Pearl, and brick pavement on that portion of Church Street in dispute, including the entire track area, as per plans and specifications furnished by one Breed, the city engineer; and that such understanding is shown by the written contract and specifications with Ricci.

It is urged that the city, by force of this contract, assumed the legal obligation and the duty to repave said streets and is precluded from enforcing the supposed duty against respondent by mandamus. Concerning this, it is enough to say that no such contract has been established.

And it is further contended that whatever are the present conditions of the trolley area on Church and Pearl Streets, they were created by the relator itself, and so it is not entitled to an order on the respondent to repair the damage thus caused.

It appears that, in the preparation for paving Church and Pearl Streets under the aforesaid contract, the contractor for the city made certain excavations on each side of the street up to the rail in the track area as far as College Street and to some extent between the rails, and carried away the material.

[25, 26] We find the fact to be that the track area was, prior to any action on the part of the city or its contractor Ricci, out of repair; and that it did not then and does not now, conform to the wrought grade of the streets in question. So far as the company's obligation under the franchise agreement to remedy these defects is concerned, it is unaffected by what the company complains of. Then, too, if the city has invaded the rights of the company in the respect complained of, it is a matter of purely private concern and neither excuses the latter in its refusal to discharge its public duties nor justifies it in allowing the track area to become an obstruction to the right of the public to the safe and convenient use of the streets in question.

[27] It is contended that the type of rails prayed for will not be ordered because it is not suitable for the kind of paving used; that the respondent will not be ordered to discard the grooved rails now laid and substitute T-rails therefor. The contract requirement is that—"Whenever the City shall pave Church Street, the Railroad Company shall lay such rail in Church Street as the City Council shall direct, and as shall be suitable to the paving to be used." This agreement was

made before any paving was done on Church Street, at least our attention is not called to any evidence to the contrary. In 1898 that portion of the street from Bank to Pearl was paved with brick, and in 1904 the remainder of the street was "recovered with concrete." On the later date the grooved rails now in use, were laid under direction of the city council. Whether the relator is now entitled to have the order of the city council enforced respecting the kind of rail to be used depends upon the construction to be given to the quoted provisions of the contract.

Manifestly, the choice of the rail to be used when the street was first paved, rested with the city council, if suitable to the paving to be used. It must be held that the agreement contemplated, not only the original paving, but such subsequent repaving as the needs of the city should require. This is necessarily implied when account is taken of conditions reasonably to be anticipated. But it does not follow that the agreement gives the city council authority to direct the substitution of a different type of rail, if the rail already in use is suitable to the new paving to be used. Having complied with the original directions of the city council, the relator is entitled to the benefit of its expenditures therefor until such time as a pavement is to be laid to which it is not suited. The principal, if not the only, interest the city has in the type of rail to be used, relates to its suitability to the pavement.

It fairly appears that the rails now in use would be serviceable for many years and answer all the requirements of the Traction Company. The important question then is not whether the T-rail is suitable to the new pavement, but whether the rail now in use is unsuitable to such pavement.

It fairly appears, and we so find, that the type of rail now in use is suited to the style of pavement which the relator has adopted for Church Street. It follows that it is not entitled to the order prayed for respecting the use of T-rails on such street.

*It is therefore ordered that the respondent, without delay, put the track area on the streets in question, in as good condition as the adjacent portion of such streets, grade and pave the surface thereof, with the same material as is used thereon flush with the top of the rail on the outside of the track and of the*

*surface of the adjacent pavement, and not more than one inch below the top of the rail on the inside of the track in accordance with the provisions of the franchise agreement.*

*This order to be without prejudice to the right of the street commissioners to proceed under section nine to prescribe specifications for permanent repairs as provided in said agreement.*

*Let the relator recover its costs, including the expense of the commissioners and stenographers incurred under order of Court.*

*Let a writ of mandamus issue accordingly.*